No. 24-1328

---

**In the**

**United States Court of Appeals**

**For the Tenth Circuit**

---

COLORADO MONTANA WYOMING STATE AREA

CONFERENCE OF THE NAACP, et al.,

Plaintiffs–Appellants

v.

SHAWN SMITH, et al.

Defendants–Appellees

---

Appeal from the United States District Court for the District of Colorado,

No. 1:22-cv-00581-CNS-NRN (Judge Charlotte N. Sweeney)

---

**APPELLEE EPP, SUPPLEMENTAL APPENDIX**

---

*Ashley Epp, Pro Se Appellee*

---

# Index

| ECF | Document | Page |
|-----|----------|------|
| 8 | Declaration of Beth Hendrix (Excerpt) | 20 |
| 9 | Declaration of Portia Prescott (Excerpt) | 21 |
| 10 | Declaration of Sal Hernandex (Excerpt) | 23 |
| 45 | Withdraw Motion for Preliminary Injunction (Excerpt) | 25 |
| 73 | Declaration of Yvette Roberts | 28 |
| 94 | Final Pretrial Order Submitted to the Court (Excerpt) | 31 |
| 120 | Epp & Kasun First Witness List | 32 |
| 129 | Plaintiff Response to Kasun Sanction Motion (Excerpt) | 34 |
| 152 | Court Order on Motions in Limine (Excerpts) | 35 |
| 172 | Kasun Final Witness List | 39 |
| 187 | Trial Transcript Day 1 (Excerpts) | 41 |
| 188 | Trial Transcript Day 2 (Excerpts) | 46 |
| 189 | Trial Transcript Day 3 (Excerpts) | 49 |

Trial Exhibit 50 (Admitted) .....................................................................53

Trial Exhibit 76 (Admitted) .....................................................................63

Trial Exhibit 84 (Admitted) .....................................................................65

Trial Exhibit 86 (Admitted) .....................................................................66

Trial Exhibit 96 (Admitted) .....................................................................68

Trial Exhibit 103 (Admitted) ...................................................................70

Trial Exhibit 108 (Admitted) ...................................................................72

Sal Hernandez Deposition (Excerpt) .......................................................73

"Voters Strike Back" (Excerpts) ..............................................................74

APPEAL,JD1,NDISPO,TERMED

**U.S. District Court – District of Colorado**
**District of Colorado (Denver)**
**CIVIL DOCKET FOR CASE #: 1:22–cv–00581–CNS–NRN**

Colorado Montana Wyoming State Area Conference of the NAACP et al v. United States Election Integrity Plan et al
Assigned to: Judge Charlotte N. Sweeney
Referred to: Magistrate Judge N. Reid Neureiter
Case in other court:     U.S Court of Appeals, 10th Cir., 24–01328
Cause: 42:1985 Conspiracy to Interfere with Civil Rights

Date Filed: 03/09/2022
Date Terminated: 07/18/2024
Jury Demand: None
Nature of Suit: 441 Civil Rights: Voting
Jurisdiction: Federal Question

| Date Filed | # | Docket Text |
|---|---|---|
| 03/09/2022 | 1 | COMPLAINT against All Defendants (Filing fee $ 402,Receipt Number ACODC–8355042)Attorney Amy Elizabeth Erickson added to party Colorado Montana Wyoming State Area Conference of the NAACP(pty:pla), Attorney Amy Elizabeth Erickson added to party League of Women Voters of Colorado(pty:pla), Attorney Amy Elizabeth Erickson added to party Mi Familia Vota(pty:pla), filed by Colorado Montana Wyoming State Area Conference of the NAACP, Mi Familia Vota, League of Women Voters of Colorado. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Ashley Epp, # 3 Summons Holly Kasun, # 4 Summons Shawn Smith)(Erickson, Amy) (Entered: 03/09/2022) |
| 03/09/2022 | 2 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES:Amy Elizabeth Erickson. **DO NOT REFILE THE DOCUMENT. Action to take –** counsel must submit a change of contact request through the Manage my Account tab at the PACER website at https://www.pacer.gov/, pursuant to D.C.COLO.LAttyR 5(c) and 3.5 of the Electronic Case Filing Procedures (Civil cases).(Text Only Entry) (norlin, ) (Entered: 03/09/2022) |
| 03/09/2022 | 3 | Case assigned to Magistrate Judge Nina Y. Wang. Text Only Entry (norlin, ) (Entered: 03/09/2022) |
| 03/09/2022 | 4 | SUMMONS issued by Clerk. (Attachments: # 1 Summons, # 2 Summons, # 3 Magistrate Judge Consent Form) (norlin, ) (Entered: 03/09/2022) |
| 03/09/2022 | 5 | MOTION for Temporary Restraining Order , MOTION for Preliminary Injunction *against all defendants* by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 03/09/2022) |
| 03/09/2022 | 6 | BRIEF in Support of 5 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *against all defendants* filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 03/09/2022) |
| 03/09/2022 | 7 | DECLARATION of *Casey Breese* regarding MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *against all defendants* 5 by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Attachments: # 1 Exhibit A)(Erickson, Amy) (Entered: 03/09/2022) |
| 03/09/2022 | 8 | DECLARATION of *Beth Hendrix* regarding MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *against all defendants* 5 by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 03/09/2022) |
| 03/09/2022 | 9 | DECLARATION of *Portia Prescott* regarding MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *against all defendants* 5 by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 03/09/2022) |
| 03/09/2022 | 10 | DECLARATION of *Salvador Hernandez* regarding MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *against all defendants* 5 by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 03/09/2022) |

| 03/09/2022 | 11 | Proposed Order to 5 Motion for Temporary Restraining Order and Preliminary Injunction by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) Modified on 3/9/2022 to correct event text and create linkage (athom, ). (Entered: 03/09/2022) |
| --- | --- | --- |
| 03/09/2022 | 12 | MINUTE ORDER by Magistrate Judge Nina Y. Wang on 03/09/2022. IT IS ORDERED that: The Clerk of the Court shall REDRAW this action to a District Judge for further proceedings. (alave, ) (Entered: 03/09/2022) |
| 03/09/2022 | 13 | CASE REASSIGNED pursuant to 12 Minute Order. This case is randomly reassigned to Judge Robert E. Blackburn. All future pleadings should be designated as 22–cv–00581–REB. (Text Only Entry). (alave, ) (Entered: 03/09/2022) |
| 03/09/2022 | 14 | MEMORANDUM RETURNING CASE by Senior Judge Blackburn. This case is randomly reassigned to Chief Judge Philip A. Brimmer and drawn to Magistrate Judge Nina Y. Wang. All future pleadings should be designated as 22–cv–00581–PAB. (athom, ) (Entered: 03/09/2022) |
| 03/16/2022 | 15 | SUMMONS Returned Executed by All Plaintiffs. Ashley Epp served on 3/14/2022, answer due 4/4/2022. (Erickson, Amy) (Entered: 03/16/2022) |
| 03/17/2022 | 16 | SUMMONS Returned Executed by All Plaintiffs. Shawn Smith served on 3/14/2022, answer due 4/4/2022. (Erickson, Amy) (Entered: 03/17/2022) |
| 03/23/2022 | 17 | NOTICE of Entry of Appearance by Amy Elizabeth Erickson on behalf of All Plaintiffs (Erickson, Amy) (Entered: 03/23/2022) |
| 03/23/2022 | 18 | NOTICE of Entry of Appearance by Reid Kelly Day on behalf of All Plaintiffs Attorney Reid Kelly Day added to party Colorado Montana Wyoming State Area Conference of the NAACP(pty:pla), Attorney Reid Kelly Day added to party League of Women Voters of Colorado(pty:pla), Attorney Reid Kelly Day added to party Mi Familia Vota(pty:pla) (Day, Reid) (Entered: 03/23/2022) |
| 03/23/2022 | 19 | NOTICE of Entry of Appearance by Brian Andrew Dillon on behalf of Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia VotaAttorney Brian Andrew Dillon added to party Colorado Montana Wyoming State Area Conference of the NAACP(pty:pla), Attorney Brian Andrew Dillon added to party League of Women Voters of Colorado(pty:pla), Attorney Brian Andrew Dillon added to party Mi Familia Vota(pty:pla) (Dillon, Brian) (Entered: 03/23/2022) |
| 03/23/2022 | 20 | NOTICE of Entry of Appearance by Jean Paul Bradshaw on behalf of All Plaintiffs Attorney Jean Paul Bradshaw added to party Colorado Montana Wyoming State Area Conference of the NAACP(pty:pla), Attorney Jean Paul Bradshaw added to party League of Women Voters of Colorado(pty:pla), Attorney Jean Paul Bradshaw added to party Mi Familia Vota(pty:pla) (Bradshaw, Jean) (Entered: 03/23/2022) |
| 03/23/2022 | 21 | NOTICE of Entry of Appearance by Ben Clements on behalf of All Plaintiffs Attorney Ben Clements added to party Colorado Montana Wyoming State Area Conference of the NAACP(pty:pla), Attorney Ben Clements added to party League of Women Voters of Colorado(pty:pla), Attorney Ben Clements added to party Mi Familia Vota(pty:pla) (Clements, Ben) (Entered: 03/23/2022) |
| 03/24/2022 | 22 | SUMMONS Returned Executed by All Plaintiffs. Holly Kasun served on 3/23/2022, answer due 4/13/2022. (Erickson, Amy) (Entered: 03/24/2022) |
| 03/25/2022 | 23 | NOTICE of Entry of Appearance by Ronald Andrew Fein on behalf of All Plaintiffs Attorney Ronald Andrew Fein added to party Colorado Montana Wyoming State Area Conference of the NAACP(pty:pla), Attorney Ronald Andrew Fein added to party League of Women Voters of Colorado(pty:pla), Attorney Ronald Andrew Fein added to party Mi Familia Vota(pty:pla) (Fein, Ronald) (Entered: 03/25/2022) |
| 03/25/2022 | 24 | NOTICE of Entry of Appearance by Casey Carlton Breese on behalf of All Plaintiffs Attorney Casey Carlton Breese added to party Colorado Montana Wyoming State Area Conference of the NAACP(pty:pla), Attorney Casey Carlton Breese added to party League of Women Voters of Colorado(pty:pla), Attorney Casey Carlton Breese added to party Mi Familia Vota(pty:pla) (Breese, Casey) (Entered: 03/25/2022) |
| 03/28/2022 | 25 | NOTICE of Entry of Appearance by Courtney Marie Hostetler on behalf of All Plaintiffs Attorney Courtney Marie Hostetler added to party Colorado Montana Wyoming State Area Conference of the NAACP(pty:pla), Attorney Courtney Marie Hostetler added to party League of |

| | | |
|---|---|---|
| | | Women Voters of Colorado(pty:pla), Attorney Courtney Marie Hostetler added to party Mi Familia Vota(pty:pla) (Hostetler, Courtney) (Entered: 03/28/2022) |
| 04/04/2022 | 26 | NOTICE of Entry of Appearance by R. Scott Reisch on behalf of All Defendants Attorney R. Scott Reisch added to party Ashley Epp(pty:dft), Attorney R. Scott Reisch added to party Holly Kasun(pty:dft), Attorney R. Scott Reisch added to party Shawn Smith(pty:dft), Attorney R. Scott Reisch added to party United States Election Integrity Plan(pty:dft) (Reisch, R.) (Entered: 04/04/2022) |
| 04/04/2022 | 27 | MOTION to Dismiss for Lack of Jurisdiction by Defendants Ashley Epp, Holly Kasun, Shawn Smith, United States Election Integrity Plan. (Reisch, R.) (Entered: 04/04/2022) |
| 04/06/2022 | 28 | NOTICE of Entry of Appearance by Jessica Lynn Hays on behalf of All Defendants Attorney Jessica Lynn Hays added to party Ashley Epp(pty:dft), Attorney Jessica Lynn Hays added to party Holly Kasun(pty:dft), Attorney Jessica Lynn Hays added to party Shawn Smith(pty:dft), Attorney Jessica Lynn Hays added to party United States Election Integrity Plan(pty:dft) (Hays, Jessica) (Entered: 04/06/2022) |
| 04/07/2022 | 29 | MOTION to Expedite , MOTION for Hearing/Conference re 27 MOTION to Dismiss for Lack of Jurisdiction , 5 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *against all defendants* by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Attachments: # 1 Proposed Order (PDF Only))(Erickson, Amy) (Entered: 04/07/2022) |
| 04/08/2022 | 30 | ORDER by Chief Judge Philip A. Brimmer on 4/8/2022. **ORDERED** that the portion of plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction [Docket No. 5 ] that requests issuance of a temporary restraining order is **DENIED**. **ORDERED** that the portion of plaintiffs' Motion for Expedited Hearing on Plaintiffs' Motion for Preliminary Injunction and Defendants' Motion to Dismiss [Docket No. 29 ] that requests an expedited TRO hearing is **DENIED as moot**. (trvo, ) (Entered: 04/08/2022) |
| 04/08/2022 | 31 | MINUTE ORDER by Chief Judge Philip A. Brimmer on 4/08/2022. It is ORDERED that plaintiffs shall file a witness list by **April 20, 2022** using the form found at http://www.cod.uscourts.gov/JudicialOfficers/Active/ArticleIIIJudges/HonPhilipABrimmer.aspx, indicating the witnesses it intends to call at the preliminary injunction hearing and the length of its direct examinations. It is further ORDERED that defendants shall file by **April 27, 2022**, a witness list for the preliminary injunction hearing, using the same form, which shall include estimates of the time required for cross–examining plaintiffs' witnesses and estimates of time for conducting the direct examinations of defendants witnesses. It is further ORDERED that counsel shall jointly contact Chambers via conference call (303–335–2794) on **April 29, 2022** to schedule a preliminary injunction hearing. It is further ORDERED that defendants shall respond to the portion of plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction [Docket No. 5] requesting a preliminary injunction on or before April 20, 2022, and plaintiffs may reply on or before **April 25, 2022**. It is further ORDERED that plaintiffs shall respond to defendants' Motion to Dismiss [Docket No. 27] on or before **April 18, 2022**, and defendants may reply on or before **April 22, 2022**. (pabsec, ) (Entered: 04/08/2022) |
| 04/18/2022 | 32 | NOTICE of Entry of Appearance by John C. Bonifaz on behalf of All Plaintiffs Attorney John C. Bonifaz added to party Colorado Montana Wyoming State Area Conference of the NAACP(pty:pla), Attorney John C. Bonifaz added to party League of Women Voters of Colorado(pty:pla), Attorney John C. Bonifaz added to party Mi Familia Vota(pty:pla) (Bonifaz, John) (Entered: 04/18/2022) |
| 04/18/2022 | 33 | RESPONSE to 27 MOTION to Dismiss for Lack of Jurisdiction filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Attachments: # 1 Proposed Order (PDF Only))(Erickson, Amy) (Entered: 04/18/2022) |
| 04/20/2022 | 34 | Witness List by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 04/20/2022) |
| 04/20/2022 | 35 | RESPONSE to 5 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *against all defendants* filed by Defendants Ashley Epp, Holly Kasun, Shawn Smith, United States Election Integrity Plan. (Hays, Jessica) (Entered: 04/20/2022) |
| 04/22/2022 | 36 | REPLY to Response to 27 MOTION to Dismiss for Lack of Jurisdiction filed by Defendants Ashley Epp, Holly Kasun, Shawn Smith, United States Election Integrity Plan. (Hays, Jessica) |

| | | (Entered: 04/22/2022) |
|---|---|---|
| 04/25/2022 | 37 | REPLY to Response to 5 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *against all defendants* filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 04/25/2022) |
| 04/27/2022 | 38 | Witness List *for Preliminary Injunction Hearing* by Defendants Ashley Epp, Holly Kasun, Shawn Smith, United States Election Integrity Plan. (Hays, Jessica) (Entered: 04/27/2022) |
| 04/28/2022 | 39 | ORDER by Chief Judge Philip A. Brimmer on 04/28/2022. Defendants' Motion to Dismiss [Docket No. 27 ] is **DENIED**. (athom, ) (Entered: 04/28/2022) |
| 04/28/2022 | 40 | MOTION to Expedite *Limited*, MOTION for Discovery by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Attachments: # 1 Proposed Order (PDF Only))(Erickson, Amy) (Entered: 04/28/2022) |
| 04/29/2022 | 41 | MINUTE ORDER by Chief Judge Philip A. Brimmer on 04/29/2022 re 40 Motion for Limited Expedited Discovery. Defendants shall respond to plaintiffs' motion for expedited discovery on or before **Wednesday, May 4, 2022 at 5:00 p.m.** Text Only Entry (pabsec, ) (Entered: 04/29/2022) |
| 04/29/2022 | 42 | MINUTE ORDER by Chief Judge Philip A. Brimmer on 4/29/2022, re: 5 MOTION for Temporary Restraining Order. **ORDERED** that the Court will hold a full–day preliminary injunction hearing on **June 2, 2022 at 8:30 a.m. ORDERED** that the parties shall exchange exhibits, and submit to the Court electronically, on or before **May 23, 2022 at 5:00 p.m.** (sphil, ) (Entered: 04/29/2022) |
| 05/02/2022 | 43 | RESPONSE to 40 MOTION to Expedite *Limited* MOTION for Discovery filed by Defendants Ashley Epp, Holly Kasun, Shawn Smith, United States Election Integrity Plan. (Hays, Jessica) (Entered: 05/02/2022) |
| 05/06/2022 | 44 | ORDER by Chief Judge Philip A. Brimmer on 5/6/2022, re: 40 plaintiffs' Motion for Limited Expedited Discovery is **DENIED**. (sphil, ) (Entered: 05/06/2022) |
| 05/12/2022 | 45 | MOTION to Withdraw 5 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *against all defendants* by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 05/12/2022) |
| 05/12/2022 | 46 | ORDER by Chief Judge Philip A. Brimmer on 5/12/2022 re: 45 Motion to Withdraw is **GRANTED**. The portion of Plaintiff's 5 Motion for a Temporary Restraining Order and Preliminary Injunction requesting a preliminary injunction is **WITHDRAWN**. The Preliminary Injunction Hearing set for June 2, 2022 is **VACATED**. The portion of Docket No. 29 requesting an expedited preliminary hearing is **DENIED as moot**. Text Only Entry(pabsec, ) (Entered: 05/12/2022) |
| 05/12/2022 | 47 | NOTICE of Entry of Appearance *of Dion Farganis* by Dion Richard Farganis on behalf of Colorado Montana Wyoming State Area Conference of the NAACPAttorney Dion Richard Farganis added to party Colorado Montana Wyoming State Area Conference of the NAACP(pty:pla) (Farganis, Dion) (Entered: 05/12/2022) |
| 05/12/2022 | 48 | ANSWER to 1 Complaint,, , COUNTERCLAIM against Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota by Ashley Epp, United States Election Integrity Plan, Holly Kasun, Shawn Smith.(Hays, Jessica) (Entered: 05/12/2022) |
| 06/02/2022 | 49 | MOTION to Dismiss *Counterclaims for Defamation and Abuse of Process* by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Attachments: # 1 Proposed Order (PDF Only))(Erickson, Amy) (Entered: 06/02/2022) |
| 06/17/2022 | 50 | RESPONSE to 49 MOTION to Dismiss *Counterclaims for Defamation and Abuse of Process* filed by Defendants Ashley Epp, Holly Kasun, Shawn Smith, United States Election Integrity Plan. (Hays, Jessica) (Entered: 06/17/2022) |
| 06/28/2022 | 51 | Proposed Scheduling Order *and Rule 26(f) Report* by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Attachments: # 1 Exhibit A)(Erickson, Amy) (Entered: 06/28/2022) |

| | | |
|---|---|---|
| 06/30/2022 | 52 | REPLY to Response to 49 MOTION to Dismiss *Counterclaims for Defamation and Abuse of Process* filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 06/30/2022) |
| 08/01/2022 | 53 | REASSIGNMENT OF JUDGE. This action is reassigned to Judge Charlotte N. Sweeney upon her appointment. Unless otherwise ordered, the dates and times for all previously scheduled matters will be maintained and will now be handled by Judge Sweeney in Courtroom 204 in the Byron Rogers Courthouse. Her chambers are located in C–253 and her telephone number is (303) 335–2610. All future pleadings should be designated as 22–cv–00581–CNS. (Text only entry) (agarc, ) (Entered: 08/01/2022) |
| 08/05/2022 | 54 | MOTION for Judgment on the Pleadings by Defendants Ashley Epp, Holly Kasun, Shawn Smith, United States Election Integrity Plan. (Hays, Jessica) (Entered: 08/05/2022) |
| 08/26/2022 | 55 | RESPONSE to 54 MOTION for Judgment on the Pleadings filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 08/26/2022) |
| 08/29/2022 | 56 | Proposed Scheduling Order *and Rule 26(f) Report (Amended)* by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 08/29/2022) |
| 08/29/2022 | 57 | ORDER REFERRING CASE to Magistrate Judge N. Reid Neureiter **non–dispositive matters**. Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b), this case is referred to the assigned United States Magistrate Judge to (1) convene a scheduling conference under Fed. R. Civ. P. 16(b) and enter a scheduling order meeting the requirements of Local Civ. R. 16.2, (2) conduct such status conferences and issue such orders necessary for compliance with the scheduling order, including amendments or modifications of the scheduling order upon a showing of good cause, (3) hear and determine pretrial matters, including discovery and other non–dispositive motions, (4) pursuant to Local Civ. R. 16.6 and at the discretion of the Magistrate Judge, convene such early neutral evaluation and/or settlement conferences and direct related procedures as may facilitate resolution of this case without the necessity of a motion or prior authorization of the undersigned. By Judge Charlotte N. Sweeney on 8/29/2022. Text Only Entry (cnssec. ) (Entered: 08/29/2022) |
| 08/30/2022 | 58 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 30 August 2022. It is hereby ORDERED that a Scheduling Conference is set for September 13, 2022 at 9:30 a.m. The parties are directed to call the conference line as a participant at (888) 398–2342, Access Code 5755390# at the scheduled time. PLEASE READ ATTACHED MINUTE ORDER. (cmadr, ) (Entered: 08/30/2022) |
| 09/06/2022 | 59 | REPLY to Response to 54 MOTION for Judgment on the Pleadings filed by Defendants Ashley Epp, Holly Kasun, Shawn Smith, United States Election Integrity Plan. (Hays, Jessica) (Entered: 09/06/2022) |
| 09/13/2022 | 60 | MINUTE ENTRY for proceedings held before Magistrate Judge N. Reid Neureiter: Telephonic Scheduling Conference held on 9/13/2022. Discovery due by 12/2/2022. Dispositive Motions due by 12/16/2022. A Discovery Conference is set for September 22, 2022 at 2:00 p.m. before Magistrate Judge N. Reid Neureiter in Courtroom C203, Second floor, Byron G. Rogers Courthouse, 1929 Stout Street, Denver, Colorado 80294.The parties are directed to prepare and email to Chambers (Neureiter_chambers@cod.uscourts.gov) by 12:00 PM on September 21, 2022 a short (no longer than five pages each, ten pages total) joint statement setting forth each side's respective position concerning the dispute. The parties are advised that the joint statement will be attached to the courtroom minutes and made a part of the record. If the parties resolve the dispute, then they shall jointly contact Judge Neureiter's Chambers to vacate the hearing. FTR: Courtroom C203. (rvill, ) (Entered: 09/13/2022) |
| 09/13/2022 | 61 | SCHEDULING ORDER by Magistrate Judge N. Reid Neureiter on September 13, 2022. (rvill, ) (Entered: 09/13/2022) |
| 09/20/2022 | 62 | MINUTE ORDER: A Final Pretrial Conference is set for 5/12/2023 at 8:30 AM in Courtroom C204 before Judge Charlotte N. Sweeney. The parties' Proposed Pretrial Order is due by 5/5/2023. By Judge Charlotte N. Sweeney on 9/20/2022. Text Only Entry (cnssec. ) (Entered: 09/20/2022) |
| 09/21/2022 | 63 | Minute ORDER by Magistrate Judge N. Reid Neureiter on 21 September 2022. In light of the parties' Joint Statement submitted to chambers, it is hereby ORDERED that the Discovery Hearing set for September 22, 2022 at 2:00 p.m. is VACATED. PLEASE READ ATTACHED |

| | | MINUTE ORDER. (cmadr, ) (Entered: 09/21/2022) |
|---|---|---|
| 10/19/2022 | 64 | MOTION for Protective Order by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) Modified on 10/19/2022 to edit event type per chambers. (sphil, ). (Entered: 10/19/2022) |
| 10/19/2022 | 65 | MEMORANDUM regarding 64 MOTION for Protective Order. Motion 64 is referred to Magistrate Judge N. Reid Neureite, by Judge Charlotte N. Sweeney on 10/19/2022. Text Only Entry (cnssec.) (Entered: 10/19/2022) |
| 10/19/2022 | 66 | MINUTE ORDER by Magistrate Judge N. Reid Neureiter on October 19, 2022. The Stipulation and Proposed Protective Order [Motion] (Dkt. # 64 ) is GRANTED. The Protective Order is APPROVED and made an Order of Court. (rvill, ) (Entered: 10/19/2022) |
| 10/19/2022 | 67 | PROTECTIVE ORDER by Magistrate Judge N. Reid Neureiter on October 19, 2022. (rvill, ) (Entered: 10/19/2022) |
| 11/11/2022 | 68 | CERTIFICATE of Mailing/Service *Plaintiffs' Expert Witness Disclosures* by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 11/11/2022) |
| 11/21/2022 | 69 | NOTICE of Entry of Appearance by Kristin M. Stock on behalf of All Plaintiffs Attorney Kristin M. Stock added to party Colorado Montana Wyoming State Area Conference of the NAACP(pty:pla), Attorney Kristin M. Stock added to party League of Women Voters of Colorado(pty:pla), Attorney Kristin M. Stock added to party Mi Familia Vota(pty:pla) (Stock, Kristin) (Entered: 11/21/2022) |
| 12/02/2022 | 70 | MOTION for Summary Judgment by Defendants Ashley Epp, Holly Kasun, Shawn Smith, United States Election Integrity Plan. (Attachments: # 1 Exhibit 1– Prescott Deposition Transcript, # 2 Exhibit 2– Hendrix Deposition Transcript, # 3 Exhibit 3– Hernandez Deposition Transcript)(Hays, Jessica) (Entered: 12/02/2022) |
| 12/16/2022 | 71 | MOTION to Exclude *Expert Testimony* by Defendants Ashley Epp, Holly Kasun, Shawn Smith, United States Election Integrity Plan. (Attachments: # 1 Exhibit 1– Expert Opinion, # 2 Exhibit 2– Smith Deposition Transcript)(Hays, Jessica) (Entered: 12/16/2022) |
| 12/23/2022 | 72 | RESPONSE to 70 MOTION for Summary Judgment filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Attachments: # 1 Exhibit A – County & Local Organizing Playbook, dated August, 2021, # 2 Exhibit B – Colorado Canvassing Report, dated 3/11/2022, # 3 Exhibit C – 11/21/2022 Deposition of Salvador Hernandez – Transcript Excerpts, # 4 Exhibit D – 11/22/2022 Deposition of Portia Prescott – Transcript Excerpts, # 5 Exhibit E –11/23/2022 Deposition of Beth Hendrix Nieland – Transcript Excerpts, # 6 Exhibit F – Plaintiffs Second Amended Rule 26(A)(1) Disclosures, dated 12/2/2022, # 7 Exhibit G – 11/29/2022 Deposition of USEIP – Transcript Excerpts, # 8 Exhibit H – 8/16/2022 Deposition of Holly Kasun – Transcript Excerpts, # 9 Exhibit I – 8/15/2022 Deposition of Shawn Smith – Transcript Excerpts, # 10 Exhibit J – 8/23/2022 Deposition of Ashley Epp – Transcript Excerpts, # 11 Exhibit K – Hitchhikers Guide to Election Fraud Analytics, # 12 Exhibit L – April, 2021, Messages from Basecamp, # 13 Exhibit M – May, 2021, Messages from Basecamp, # 14 Exhibit N – April, 2021, Messages from Basecamp, # 15 Exhibit O – 10/5/2022 Deposition of Jeffrey Young – Transcript Excerpts)(Erickson, Amy) (Entered: 12/23/2022) |
| 12/23/2022 | 73 | DECLARATION of *Yvette Roberts* regarding MOTION for Summary Judgment 70 by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 12/23/2022) |
| 01/03/2023 | 74 | USA STATEMENT of Interest re 70 MOTION for Summary Judgment *Statement of Interest of the United States* by Interested Party United States of America. (Wu, Zeyen) Modified on 1/4/2023 to edit text. (sphil, ). (Entered: 01/03/2023) |
| 01/06/2023 | 75 | RESPONSE to 71 MOTION to Exclude *Expert Testimony of Professor Atiba Ellis* filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 01/06/2023) |
| 01/06/2023 | 76 | REPLY to Response to 70 MOTION for Summary Judgment filed by Defendants Ashley Epp, Holly Kasun, Shawn Smith, United States Election Integrity Plan. (Attachments: # 1 Exhibit 1– Ashley Epp Deposition Transcript, # 2 Exhibit 2– Jeff Young Deposition Transcript, # 3 Exhibit 3– Jeff Young Declaration, # 4 Exhibit 4– Cory Anderson Declaration, # 5 Exhibit 5– USEIP |

| | | |
|---|---|---|
| | | 30(b)(6) Deposition Transcript, # 6 Exhibit 6– Holly Kasun Deposition Transcript, # 7 Exhibit 7– Shawn Smith Deposition Transcript, # 8 Exhibit 8– USEIP Training Materials, # 9 Exhibit 9– Photographs, # 10 Exhibit 10– Beth Hendrix Deposition Transcript)(Hays, Jessica) (Entered: 01/06/2023) |
| 01/16/2023 | 77 | RESPONSE to 74 Statement by Defendants Ashley Epp, Holly Kasun, Shawn Smith, United States Election Integrity Plan. (Hays, Jessica) (Entered: 01/16/2023) |
| 01/20/2023 | 78 | REPLY to Response to 71 MOTION to Exclude *Expert Testimony* filed by Defendants Ashley Epp, Holly Kasun, Shawn Smith, United States Election Integrity Plan. (Hays, Jessica) (Entered: 01/20/2023) |
| 01/23/2023 | 79 | MOTION to Withdraw as Attorney by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Day, Reid) (Entered: 01/23/2023) |
| 01/23/2023 | 80 | ORDER denying 79 Motion to Withdraw as Attorney. Denied for failure to comply with D.C.COLO.LAttyR 5(b). By Judge Charlotte N. Sweeney on 1/23/2023. Text Only Entry(cnssec) (Entered: 01/23/2023) |
| 01/23/2023 | 81 | ORDER granting 49 Plaintiffs' Motion to Dismiss. Defendants' counterclaims for defamation and abuse of process are DISMISSED. by Judge Charlotte N. Sweeney on 1/23/23. Text Only Entry(jdyne) (Entered: 01/23/2023) |
| 01/23/2023 | 82 | MOTION to Withdraw as Attorney by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Day, Reid) (Entered: 01/23/2023) |
| 01/23/2023 | 83 | ORDER granting 82 Motion to Withdraw as Attorney. Attorney Reid Kelly Day is withdrawn. By Judge Charlotte N. Sweeney on 1/23/2023. Text Only Entry(cnssec. ) (Entered: 01/23/2023) |
| 01/31/2023 | 84 | ORDER denying 54 Motion for Judgment on the Pleadings; granting in part and denying in part 70 Motion for Summary Judgment by Judge Charlotte N. Sweeney on 1/31/23.(jdyne) (Entered: 01/31/2023) |
| 02/20/2023 | 85 | MOTION to Clarify re 81 Order on Motion to Dismiss by Counter Claimants Ashley Epp, Holly Kasun, Shawn Smith. (Hays, Jessica) (Entered: 02/20/2023) |
| 03/13/2023 | 86 | RESPONSE to 85 MOTION to Clarify re 81 Order on Motion to Dismiss filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 03/13/2023) |
| 03/31/2023 | 87 | ORDER granting 85 MOTION to Clarify re 81 Order on Motion to Dismiss. Defendants' filed a Motion for Clarification of this Court's Order from January 23, 2023 (ECF No. 81 ), regarding whether their counterclaims were dismissed with prejudice. The Court ruled that Defendants' defamation counterclaim was denied for failure to state a claim because the allegedly defamatory statements are contained within the Complaint and therefore absolutely privileged. This counterclaim was dismissed with prejudice. The Court also ruled that Defendants' second counterclaim, abuse of process, raised arguments that should have been brought under Federal Rule of Civil Procedure 12(b)(6). This counterclaim was also dismissed with prejudice because Defendants had the opportunity to file a Rule 12(b)(6) motion and failed to do so. The Court finds no reason to reconsider its prior order and will not do so. By Judge Charlotte N. Sweeney on 3/31/2023. Text Only Entry(cnssec. ) (Entered: 03/31/2023) |
| 05/03/2023 | 88 | MOTION for Leave to Appear *Remotely* by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 05/03/2023) |
| 05/05/2023 | 89 | ORDER granting 88 MOTION for Leave to Appear Remotely. The Court will hold the Final Pretrial Conference set 5/12/2023 at 8:30 a.m. telephonically. The parties are directed to dial (571) 353–2301 and enter Access Code 770126989# when prompted. By Judge Charlotte N. Sweeney on 5/5/2023. Text Only Entry(cnssec. ) (Entered: 05/05/2023) |
| 05/05/2023 | 90 | Proposed Pretrial Order by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 05/05/2023) |

| 05/11/2023 | 91 | MOTION to Amend/Correct/Modify 90 Proposed Pretrial Order by Defendants Ashley Epp, Holly Kasun, Shawn Smith. (Attachments: # 1 Exhibit Amended Proposed Pretrial Order)(Hays, Jessica) (Entered: 05/11/2023) |
| 05/12/2023 | 92 | MINUTE ENTRY for proceedings held before Judge Charlotte N. Sweeney: Final Pretrial Conference held on 5/12/2023. 91 Motion for Leave to Amend Proposed Pretrial Order is DENIED as moot. Four–day Bench Trial set to commence 2/5/2024 at 8:30 AM in Courtroom A 702 before Judge Charlotte N. Sweeney with a Trial Preparation Conference on 1/23/2024 at 1:00 PM in Courtroom A 702 before Judge Charlotte N. Sweeney. Court Reporter: Sarah Mitchell. (jdyne, ) (Entered: 05/12/2023) |
| 05/12/2023 | 93 | ORDER SETTING TRIAL: Four–day Bench Trial set to commence 2/5/2024 at 8:30 AM in Courtroom A 702 before Judge Charlotte N. Sweeney with a Trial Preparation Conference on 1/23/2024 at 1:00 PM in Courtroom A 702 before Judge Charlotte N. Sweeney. by Judge Charlotte N. Sweeney on 5/12/23. (jdyne) (Entered: 05/12/2023) |
| 05/15/2023 | 94 | Proposed Pretrial Order by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Breese, Casey) (Entered: 05/15/2023) |
| 05/16/2023 | 95 | FINAL PRETRIAL ORDER by Judge Charlotte N. Sweeney on 5/16/23. (jdyne) (Entered: 05/16/2023) |
| 06/07/2023 | 96 | ORDER denying 71 Motion to Exclude Testimony of Atiba Ellis by Judge Charlotte N. Sweeney on 6/7/23.(jdyne) (Main Document 96 replaced on 6/7/2023 with executed signature page) (jdyne). (Entered: 06/07/2023) |
| 12/29/2023 | 97 | MOTION to Withdraw as Attorney by Defendants Ashley Epp, Holly Kasun. (Attachments: # 1 Proposed Order (PDF Only))(Hays, Jessica) (Entered: 12/29/2023) |
| 01/02/2024 | 98 | ORDER granting 97 Motion to Withdraw as Attorney. Attorney Jessica Lynn Hays and R. Scott Reisch are withdrawn as to Defendants Epps and Kasun. The Court orders that Defendants Epps and Kasun notify the Court and all parties on or before 1/5/2024 of their up–to–date contact information. By Judge Charlotte N. Sweeney on 1/2/2024. Text Only Entry(cnsja.) (Entered: 01/02/2024) |
| 01/02/2024 | 99 | MOTION in Limine by Defendant Shawn Smith. (Attachments: # 1 Exhibit, # 2 Proposed Order (PDF Only))(Hays, Jessica) (Entered: 01/02/2024) |
| 01/02/2024 | 102 | NOTICE of Change of Address/Contact Information by Defendant Holly Kasun (sphil, ) (Entered: 01/04/2024) |
| 01/03/2024 | 100 | NOTICE of Withdrawal of Counsel by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota (Farganis, Dion) (Entered: 01/03/2024) |
| 01/03/2024 | 101 | MINUTE ORDER re: 100 NOTICE of Withdrawal of Counsel filed by Mi Familia Vota, Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado. The Court will not act on a Notice of Withdrawal of Counsel. Consistent with this Court's Local Rules (See D.C.COLO.LAttyR 5(b)), please file a motion. By Judge Charlotte N. Sweeney on 1/3/2024. Text Only Entry (cnsja. ) Modified on 1/3/2024 to correct text. (cnsja.). (Entered: 01/03/2024) |
| 01/03/2024 | 103 | NOTICE of Change of Address/Contact Information by Defendant Ashley Epp (sphil, ) (Entered: 01/04/2024) |
| 01/04/2024 | 104 | First MOTION to Continue Hearing by Defendant Holly Kasun. (Kasun, Holly) (Entered: 01/04/2024) |
| 01/05/2024 | 105 | RESPONSE to 104 First MOTION to Continue Hearing or Trial filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 01/05/2024) |
| 01/05/2024 | 106 | MINUTE ORDER re: 104 First Motion to Continue Hearing filed by Holly Kasun. The Court is in receipt of the Plaintiffs' Response to Defendant Kasun's Motion to Continue. The Court requests that all other parties file a Response on or before 1/11/2024. By Judge Charlotte N. Sweeney on 1/5/2024. Text Only Entry (cnsja.) (Entered: 01/05/2024) |

| 01/08/2024 | 107 | First MOTION to Continue *Trial or Hearing* by Defendant Ashley Epp. (Epp, Ashley) (Entered: 01/08/2024) |
|---|---|---|
| 01/09/2024 | 108 | RESPONSE to 107 First MOTION to Continue *Trial or Hearing*, 104 First MOTION to Continue *Hearing of Hearing or Trial* filed by Defendant Ashley Epp. (Attachments: # 1 Exhibit Yvette Roberts Statements, # 2 Exhibit COSOS Investigation, # 3 Deposition Excerpts Plaintiff Deposition Excerpts, # 4 Exhibit LWV Safety Plan)(Epp, Ashley) (Entered: 01/09/2024) |
| 01/09/2024 | 109 | RESPONSE to 99 MOTION in Limine *by Defendant Shawn Smith* filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 01/09/2024) |
| 01/09/2024 | 110 | RESPONSE to 104 First MOTION to Continue *Hearing*, 107 First MOTION to Continue *Trial or Hearing* filed by Defendant Shawn Smith. (Hays, Jessica) (Entered: 01/09/2024) |
| 01/09/2024 | 111 | RESPONSE to 99 MOTION in Limine *IN SUPPORT* filed by Defendant Ashley Epp. (Epp, Ashley) (Entered: 01/09/2024) |
| 01/09/2024 | 112 | RESPONSE to 99 MOTION in Limine *In Support* filed by Defendant Holly Kasun. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2)(Kasun, Holly) (Entered: 01/09/2024) |
| 01/10/2024 | 113 | RESPONSE to 108 Response to Motion, 107 First MOTION to Continue *Trial or Hearing* by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 01/10/2024) |
| 01/10/2024 | 114 | REPLY to Response to 104 First MOTION to Continue *Hearing*, 107 First MOTION to Continue *Trial or Hearing IN SUPPORT* filed by Defendant Ashley Epp. (Attachments: # 1 Exhibit Communications re: Intimidation)(Epp, Ashley) (Entered: 01/10/2024) |
| 01/11/2024 | 115 | REPLY to Response to 104 First MOTION to Continue *Hearing*, 107 First MOTION to Continue *Trial or Hearing* filed by Defendant Holly Kasun. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3)(Kasun, Holly) (Entered: 01/12/2024) |
| 01/16/2024 | 116 | MINUTE ORDER re: 104 First Motion to Continue *Hearing* filed by Holly Kasun and 107 First Motion to Continue *Trial or Hearing* filed by Ashley Epp. A Hearing on the pending motions to continue is set for 1/17/2024 at 1:00 PM before Judge Charlotte N. Sweeney. The hearing will be held by video teleconference. The Court's staff will provide connection information to the parties by separate email. By Judge Charlotte N. Sweeney on 1/16/2024. Text Only Entry (cnsja. ) (Entered: 01/16/2024) |
| 01/16/2024 | 117 | Witness List by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 01/16/2024) |
| 01/16/2024 | 118 | Witness List by Defendant Shawn Smith. (Hays, Jessica) (Entered: 01/16/2024) |
| 01/16/2024 | 119 | Exhibit List *(Joint)* by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 01/16/2024) |
| 01/16/2024 | 120 | Witness List *Epp and Kasun* by Defendants Ashley Epp, Holly Kasun. (Epp, Ashley) (Entered: 01/16/2024) |
| 01/17/2024 | 121 | MOTION for Recusal by Defendant Shawn Smith. (Attachments: # 1 Exhibit 1– DU on the Bench, # 2 Exhibit 2– Matthew Shepard Foundation, # 3 Exhibit 3– FEC Report)(Hays, Jessica) (Entered: 01/17/2024) |
| 01/17/2024 | 122 | ORDER granting 104 Motion to Continue; finding as moot 107 Motion to Continue. Due to a water main break, the Arraj courthouse has been evacuated and closed for the day and the Court will be unable to proceed with the 1:00 p.m. hearing. Today's hearing is VACATED. However, the Court grants Defendant Kasun's First Motion to Continue 104 . The Bench Trial set for 2/5/2024 is VACATED. The Trial Preparation Conference set for 1/23/2024 at 1:00 is converted into a Status Conference (by Video Teleconference) at which time to Court will reset the trial and the trial preparation conference. The Court finds Defendant Epp's Motion to Continue 107 to be moot. The Court strongly encourages the parties to review the Uniform Civil Practice Standards, particularly as they relate to page–limitations for motions, responses, and replies. By Judge Charlotte N. Sweeney on 1/17/2024. Text Only Entry(cnsja. ) (Entered: 01/17/2024) |
| 01/22/2024 | 123 | NOTICE of Entry of Appearance by Amira Marcella Mattar on behalf of Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi |

| | | |
|---|---|---|
| | | Familia VotaAttorney Amira Marcella Mattar added to party Colorado Montana Wyoming State Area Conference of the NAACP(pty:pla), Attorney Amira Marcella Mattar added to party League of Women Voters of Colorado(pty:pla), Attorney Amira Marcella Mattar added to party Mi Familia Vota(pty:pla) (Mattar, Amira) (Entered: 01/22/2024) |
| 01/22/2024 | 124 | First MOTION for Leave to *Reopen Limited Discovery* by Defendant Holly Kasun. (Kasun, Holly) (Entered: 01/22/2024) |
| 01/23/2024 | 125 | MINUTE ENTRY for proceedings held before Judge Charlotte N. Sweeney: Status Conference via Video Teleconference held on 1/23/2024. 121 Motion to Recuse Judge Sweeney is DENIED. 124 Motion for Leave to Reopen Limited Discovery is DENIED. Five–day Jury Trial set to commence 7/15/2024 at 8:00 AM in Courtroom A 702 before Judge Charlotte N. Sweeney with a Trial Preparation Conference on 6/21/2024 at 9:00 AM in Courtroom A 702 before Judge Charlotte N. Sweeney. Court Reporter: Sarah Mitchell. (jdyne) (Entered: 01/23/2024) |
| 01/23/2024 | 126 | AMENDED MINUTE ENTRY for proceedings held before Judge Charlotte N. Sweeney re 125 Status Conference via Video Teleconference held on 1/23/2024. Amended to reflect Bench Trial (not Jury Trial), as indicated. Court Reporter: Sarah Mitchell. (jdyne) (Entered: 01/23/2024) |
| 01/23/2024 | 127 | AMENDED ORDER SETTING TRIAL: Five–day Bench trial set to commence 7/15/2024 at 8:30 a.m. with a Trial Preparation Conference on 6/21/2024 at 9:00 a.m. By Judge Charlotte N. Sweeney on 1/23/24. (jdyne) (Entered: 01/23/2024) |
| 02/27/2024 | 128 | First MOTION for Sanctions *Emergency Under FRCP 26 & 37* by Defendant Holly Kasun. (Attachments: # 1 Deposition Excerpts Exhibit 1_ B. Hendrix LWV, # 2 Exhibit Exhibit 2_Pltf initial disclosures, # 3 Exhibit Exhibit 3_Pltf amended disclosures, # 4 Deposition Excerpts Exhibit 4_ P. Prescott NAACP, # 5 Deposition Excerpts Exhibit 5_ S.H. MFV, # 6 Exhibit Exhibit 6_Def Initial disclosures, # 7 Exhibit Exhibit 7_ Quick Ref. Guide Pltf violations, # 8 Exhibit Exhibit 8_LWV interrog, # 9 Exhibit Exhibit 9_ NAACP interrog, # 10 Exhibit Exhibit 10_MFV interrog, # 11 Exhibit Exhibit 11_pltf comm missing docs, # 12 Exhibit Exhibit 12_Def priv log)(Kasun, Holly) (Entered: 02/27/2024) |
| 03/12/2024 | 129 | RESPONSE to 128 First MOTION for Sanctions *Emergency Under FRCP 26 & 37* filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 03/12/2024) |
| 03/12/2024 | 130 | DECLARATION of *Amy Erickson* regarding First MOTION for Sanctions *Emergency Under FRCP 26 & 37* 128 by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Erickson, Amy) (Entered: 03/12/2024) |
| 03/22/2024 | 131 | Renewed COUNTERCLAIM *Abuse of Process* against All Plaintiffs, filed by Ashley Epp, Holly Kasun. (Attachments: # 1 Exhibit Plaintiff Open Records Request, # 2 Exhibit James Cannon to SecState and AG, # 3 Exhibit Grand Junction Police Department –– No record of investigation, # 4 Exhibit Mesa County Sheriffs –– No record of investigation, # 5 Exhibit James Cannon –– cant recall records, # 6 Exhibit Full production from Mesa (1/2), # 7 Exhibit Full production from Mesa (2/2), # 8 Exhibit SecState –– First mention of VRA, # 9 Exhibit SecState –– Connects with Yvette Roberts)(Epp, Ashley) Modified on 3/25/2024 to edit event type per chambers. (sphil, ). (Entered: 03/22/2024) |
| 03/22/2024 | 132 | ERRATA re 131 Counterclaim,, *Abuse of Process* by Defendants Ashley Epp, Holly Kasun. (Attachments: # 1 Proposed Document Pleading updated to amend date of service)(Epp, Ashley) (Entered: 03/22/2024) |
| 03/26/2024 | 133 | REPLY to Response to 128 First MOTION for Sanctions *Emergency Under FRCP 26 & 37 Reply to Plaintiffs Response (ECF 129) to (ECF 128)* filed by Defendant Holly Kasun. (Kasun, Holly) (Entered: 03/26/2024) |
| 04/02/2024 | 134 | Amended COUNTERCLAIM *Abuse of Process* against All Plaintiffs, filed by Holly Kasun, Ashley Epp. (Attachments: # 1 Exhibit Unredacted Emails 1/2, # 2 Exhibit Unredacted Emails 2/2)(Epp, Ashley) Modified on 4/2/2024 to edit event type per chambers. (sphil, ). (Entered: 04/02/2024) |
| 04/11/2024 | 135 | MOTION to Withdraw as Attorney *Ronald Fein* by Counter Defendants Colorado Montana Wyoming State Area Conference of the NAACP, Colorado Montana Wyoming State Area Conference of the NAACP, Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, League of Women Voters of Colorado, League of Women Voters of Colorado, Mi Familia Vota, Mi Familia Vota, Mi Familia Vota, Plaintiffs Colorado |

| | | |
|---|---|---|
| | | Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Fein, Ronald) (Entered: 04/11/2024) |
| 04/11/2024 | 136 | ORDER granting 135 Motion to Withdraw as Attorney. Attorney Ronald Andrew Fein is withdrawn. By Judge Charlotte N. Sweeney on 4/11/2024. Text Only Entry(cnsja, ) (Entered: 04/11/2024) |
| 04/12/2024 | 137 | RESPONSE to 134 MOTION for Order to, 131 MOTION for Order to filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Stock, Kristin) (Entered: 04/12/2024) |
| 04/17/2024 | 138 | REPLY to 137 Response to Motion *Counterclaim Abuse of Process* by Defendants Ashley Epp, Holly Kasun. (Epp, Ashley) (Entered: 04/17/2024) |
| 04/29/2024 | 139 | ORDER finding as moot 131 Renewed COUNTERCLAIM Abuse of Process. The Court finds the motion at ECF No. 131 to be moot in light of the filing of an Amended Motion at ECF No. 134 . By Judge Charlotte N. Sweeney on 4/29/2024. Text Only Entry(cnsja, ) (Entered: 04/29/2024) |
| 05/30/2024 | 140 | First MOTION in Limine by Defendant Ashley Epp. (Attachments: # 1 Proposed Order (PDF Only) Proposed Order on Epp Motion in Limine)(Epp, Ashley) (Entered: 05/30/2024) |
| 05/31/2024 | 141 | MOTION in Limine by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Stock, Kristin) (Entered: 05/31/2024) |
| 05/31/2024 | 142 | First MOTION in Limine *to Exclude Certain Evidence and Admit Certain Evidence* by Defendant Holly Kasun. (Attachments: # 1 Proposed Order (PDF Only) Order Re: Defendant Kasun's MIL)(Kasun, Holly) (Entered: 05/31/2024) |
| 05/31/2024 | 143 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 141 MOTION in Limine filed by attorney **Kristin Stock**. **DO NOT REFILE THE DOCUMENT. Action to take –** counsel must submit a change of contact request through the Manage my Account tab at the PACER website at https://www.pacer.gov/, pursuant to D.C.COLO.LAttyR 5(c) and 3.5 of the Electronic Case Filing Procedures (Civil cases). (Text Only Entry) (sphil, ) (Entered: 06/03/2024) |
| 06/05/2024 | 144 | Unopposed MOTION for Leave to Appear *Virtually at the 6/21/2024 Trial Preparation Conference* by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 06/05/2024) |
| 06/06/2024 | 145 | ORDER granting in part and denying in part 144 Unopposed Motion for Leave to Appear Virtually at the 6/21/2024 Trial Preparation Conference. The Court will require lead counsel for Plaintiffs and lead counsel for Defendant Smith to appear in person. All others may appear via Video Teleconference. The Court's staff will provide connection instructions to the parties by email prior to the hearing. By Judge Charlotte N. Sweeney on 6/6/2024. Text Only Entry(cnsja, ) (Entered: 06/06/2024) |
| 06/06/2024 | 146 | RESPONSE to 141 MOTION in Limine filed by Defendant Ashley Epp. (Epp, Ashley) (Entered: 06/06/2024) |
| 06/06/2024 | 147 | RESPONSE to 141 MOTION in Limine filed by Defendant Holly Kasun. (Kasun, Holly) (Entered: 06/06/2024) |
| 06/07/2024 | 148 | RESPONSE to 142 First MOTION in Limine *to Exclude Certain Evidence and Admit Certain Evidence* filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 06/07/2024) |
| 06/07/2024 | 149 | RESPONSE to 140 First MOTION in Limine filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 06/07/2024) |
| 06/10/2024 | 150 | NOTICE *of Attorney Appearance* by Defendant Holly Kasun (Wynne, Michael) (Entered: 06/10/2024) |
| 06/11/2024 | 151 | NOTICE of Entry of Appearance by Cameron C. Powell on behalf of Holly KasunAttorney Cameron C. Powell added to party Holly Kasun(pty:dft) (Powell, Cameron) (Entered: 06/11/2024) |

| 06/11/2024 | 152 | ORDER denying 99 Motion in Limine; denying 128 Motion for Sanctions; denying 134 Motion for Order; granting in part and denying in part 140 Motion in Limine; granting in part and denying in part 141 Motion in Limine; granting in part and taking under advisement 142 Motion in Limine. By Judge Charlotte N. Sweeney on 6/11/24.(jdyne) (Entered: 06/11/2024) |
| --- | --- | --- |
| 06/13/2024 | 153 | Witness List *with Time Allocation* by Defendant Ashley Epp. (Epp, Ashley) (Entered: 06/13/2024) |
| 06/14/2024 | 154 | Witness List by Defendant Shawn Smith. (Hays, Jessica) (Entered: 06/14/2024) |
| 06/14/2024 | 155 | Witness List by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 06/14/2024) |
| 06/14/2024 | 156 | Witness List by Defendant Holly Kasun. (Wynne, Michael) (Entered: 06/14/2024) |
| 06/14/2024 | 157 | Exhibit List *(Joint)* by Defendants Ashley Epp, Holly Kasun, Shawn Smith. (Wynne, Michael) (Entered: 06/14/2024) |
| 06/18/2024 | 158 | TRIAL BRIEF by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 06/18/2024) |
| 06/18/2024 | 159 | Proposed Findings of Fact *and Conclusions of Law* by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Hostetler, Courtney) (Entered: 06/18/2024) |
| 06/19/2024 | 160 | TRIAL BRIEF by Defendant Ashley Epp. (Epp, Ashley) (Entered: 06/19/2024) |
| 06/19/2024 | 161 | Proposed Findings of Fact by Defendant Ashley Epp. (Epp, Ashley) (Entered: 06/19/2024) |
| 06/19/2024 | 162 | Proposed Findings of Fact by Defendant Holly Kasun. (Wynne, Michael) (Entered: 06/19/2024) |
| 06/19/2024 | 163 | TRIAL BRIEF by Defendant Holly Kasun. (Wynne, Michael) (Entered: 06/19/2024) |
| 06/19/2024 | 164 | TRIAL BRIEF by Defendant Shawn Smith. (Hays, Jessica) (Entered: 06/19/2024) |
| 06/19/2024 | 165 | Proposed Findings of Fact *and Conclusions of Law* by Defendant Shawn Smith. (Hays, Jessica) (Entered: 06/19/2024) |
| 06/21/2024 | 166 | MINUTE ENTRY for proceedings held before Judge Charlotte N. Sweeney: Trial Preparation Conference held on 6/21/2024. Court Reporter: Sarah Mitchell. (kmyha) (Entered: 06/21/2024) |
| 06/28/2024 | 167 | Witness List by Defendant Holly Kasun. (Wynne, Michael) (Entered: 06/28/2024) |
| 07/05/2024 | 168 | MOTION to Strike *Certain Witnesses* by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Stock, Kristin) (Entered: 07/05/2024) |
| 07/08/2024 | 169 | MINUTE ORDER re: 168 Motion to Strike Certain Witnesses. The Court orders that Defendant Kasun respond to the Motion 168 on or before 7/10/2024. By Judge Charlotte N. Sweeney on 7/8/2024. Text Only Entry (cnsja, ) (Entered: 07/08/2024) |
| 07/10/2024 | 170 | Unopposed MOTION for Order to *Connect Public Conference Line for Trial* by Defendant Ashley Epp. (Epp, Ashley) (Entered: 07/10/2024) |
| 07/10/2024 | 171 | RESPONSE to 168 MOTION to Strike *Certain Witnesses* filed by Defendant Holly Kasun. (Attachments: # 1 Exhibit)(Wynne, Michael) (Entered: 07/10/2024) |
| 07/12/2024 | 172 | Witness List by Defendant Holly Kasun. (Wynne, Michael) (Entered: 07/12/2024) |
| 07/12/2024 | 173 | Witness List by Defendant Shawn Smith. (Hays, Jessica) (Entered: 07/12/2024) |
| 07/12/2024 | 174 | Exhibit List *Final List of Joint Exhibits* by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 07/12/2024) |
| 07/12/2024 | 175 | ORDER granting 168 Motion to Strike Certain Witnesses. By Judge Charlotte N. Sweeney on 7/12/2024.(cnsja, ) (Entered: 07/12/2024) |
| 07/12/2024 | 176 | ORDER denying 170 Unopposed Motion for Order to Connect Public Conference Line for Trial. The Court declines to connect the public telephone line for a select few family members of one defendant as this trial will be held in–person in the courtroom and will be open to the general public to observe. By Judge Charlotte N. Sweeney on 7/12/2024. Text Only Entry(cnsja, ) |

| | | |
|---|---|---|
| | | (Entered: 07/12/2024) |
| 07/12/2024 | 177 | Witness List by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 07/12/2024) |
| 07/12/2024 | 178 | Witness List by Defendant Ashley Epp. (Epp, Ashley) (Entered: 07/12/2024) |
| 07/12/2024 | 179 | Witness List *AMENDED* by Defendant Ashley Epp. (Epp, Ashley) (Entered: 07/12/2024) |
| 07/12/2024 | 180 | Witness List *AMENDED* by Defendant Holly Kasun. (Wynne, Michael) (Entered: 07/12/2024) |
| 07/15/2024 | 181 | MINUTE ENTRY for proceedings held before Judge Charlotte N. Sweeney: Bench Trial Day One held on 7/15/2024. Opening statements given, evidence and testimony presented, trial continued. Court Reporter: Sarah Mitchell. (jdyne) (Entered: 07/15/2024) |
| 07/16/2024 | 182 | MINUTE ENTRY for proceedings held before Judge Charlotte N. Sweeney: Bench Trial Day Two held on 7/16/2024. Evidence and testimony presented, trial continued. Court Reporter: Sarah Mitchell. (jdyne) (Entered: 07/16/2024) |
| 07/17/2024 | 183 | MINUTE ENTRY for proceedings held before Judge Charlotte N. Sweeney: Bench Trial Day Three held on 7/17/2024. Evidence and testimony presented, trial continued. Court Reporter: Sarah Mitchell. (jdyne) (Entered: 07/17/2024) |
| 07/18/2024 | 184 | MINUTE ENTRY for proceedings held before Judge Charlotte N. Sweeney: Bench Trial Day Four held on 7/18/2024. Oral Motion for Judgment on Partial Findings under Fed. R. Civ. P. 52(c) is GRANTED, judgment to enter, trial concluded. Court Reporter: Sarah Mitchell. (jdyne) (Entered: 07/18/2024) |
| 07/18/2024 | 185 | FINAL JUDGMENT in favor of the defendants, Ashley Epp, Holly Kasun, and Shawn Smith, and against the plaintiffs, Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, and Mi Familia Vota. By Judge Charlotte N. Sweeney on 7/18/24. (jdyne) (Entered: 07/18/2024) |
| 07/26/2024 | 186 | TRANSCRIPT of Trial Preparation Conference held on June 21, 2024 before Judge Sweeney. Pages: 1–23. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (smitc, ) (Entered: 07/26/2024) |
| 07/30/2024 | 187 | TRANSCRIPT of Bench Trial – Day 1 held on July 15, 2024 before Judge Sweeney. Pages: 1–303. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (smitc, ) (Entered: 07/30/2024) |
| 07/30/2024 | 188 | TRANSCRIPT of Bench Trial – Day 2 held on July 16, 2024 before Judge Sweeney. Pages: 304–563. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (smitc, ) (Entered: 07/30/2024) |

| 07/30/2024 | 189 | TRANSCRIPT of Bench Trial – Day 3 held on July 17, 2024 before Judge Sweeney. Pages: 564–819. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (smitc, ) (Entered: 07/30/2024) |
|---|---|---|
| 07/30/2024 | 190 | TRANSCRIPT of Bench Trial – Day 4 held on July 18, 2024 before Judge Sweeney. Pages: 820–836. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (smitc, ) (Entered: 07/30/2024) |
| 07/30/2024 | 191 | MOTION for Attorney Fees *and Costs* by Defendant Shawn Smith. (Attachments: # 1 Affidavit, # 2 Exhibit, # 3 Exhibit)(Hays, Jessica) (Entered: 07/30/2024) |
| 08/01/2024 | 192 | First MOTION for Attorney Fees *OPPOSED* by Defendant Ashley Epp. (Attachments: # 1 Exhibit Attorney Fee Schedule, # 2 Exhibit Epp Declaration / Affidavit, # 3 Exhibit Epp CV, # 4 Exhibit Epp 2023 Income, # 5 Exhibit Estimate of Entitled Reisch Fees, # 6 Exhibit Prescott Tweets During Trial)(Epp, Ashley) (Entered: 08/01/2024) |
| 08/01/2024 | 193 | BILL OF Costs by Defendant Ashley Epp. (Attachments: # 1 Exhibit)(Epp, Ashley) Modified on 8/1/2024 to edit title per chambers. (sphil, ). (Entered: 08/01/2024) |
| 08/01/2024 | 194 | Amended BILL OF COSTS re: 193 Unopposed first bill of costs by Defendant Ashley Epp. (Epp, Ashley) Modified on 8/2/2024 to edit title per chambers. (sphil, ). (Entered: 08/01/2024) |
| 08/01/2024 | 195 | NON–STIPULATED Proposed Bill of Costs by Defendant Holly Kasun. Parties conferred on 8/1/2024. The following category or categories remain under dispute: Fees of the Clerk. Fees and disbursements for printing. Fees for exemplification and copies of papers necessarily obtained for use in the case. Per court procedure, any objection to the Proposed Bill of Costs is due within 14 days (Attachments: # 1 Affidavit, # 2 Affidavit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit)(Wynne, Michael) (Entered: 08/01/2024) |
| 08/01/2024 | 196 | STIPULATED Proposed Bill of Costs by Defendant Shawn Smith. Parties conferred on 8/1/2024. The Proposed Bill of Costs is stipulated to in its entirety by all parties. No costs remain under dispute (Attachments: # 1 Itemized Expenses)(Hays, Jessica) (Entered: 08/01/2024) |
| 08/13/2024 | 197 | RESPONSE to 195 Proposed Bill of Costs,, by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Erickson, Amy) (Entered: 08/13/2024) |
| 08/16/2024 | 198 | NOTICE OF APPEAL as to 185 Judgment, by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota (Filing fee $ 605, Receipt Number ACODC–9827127) (Erickson, Amy) (Entered: 08/16/2024) |
| 08/19/2024 | 199 | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 198 Notice of Appeal filed by Mi Familia Vota, Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado to the U.S. Court of Appeals. ( Retained Counsel, Fee paid,) (Attachments: # 1 Preliminary Record)(sphil, ) (Entered: 08/19/2024) |

| 08/19/2024 | 200 | USCA Case Number 24–1328 for 198 Notice of Appeal filed by Mi Familia Vota, Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado. (sphil, ) (Entered: 08/20/2024) |
|---|---|---|
| 08/20/2024 | 201 | **"STRICKEN"** – RESPONSE to 192 First MOTION for Attorney Fees *OPPOSED* filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Attachments: # 1 Exhibit A)(Erickson, Amy) Modified on 8/22/2024 to STRIKE per 204 MINUTE ORDER (dgumb, ). (Entered: 08/20/2024) |
| 08/20/2024 | 202 | **"STRICKEN"** – RESPONSE to 191 MOTION for Attorney Fees *and Costs* filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Attachments: # 1 Exhibit A)(Erickson, Amy) Modified on 8/22/2024 to STRIKE per 204 MINUTE ORDER (dgumb, ). (Entered: 08/20/2024) |
| 08/20/2024 | 203 | OBJECTION to 195 Proposed Bill of Costs,, by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. Any reply is due within 14 days. (Attachments: # 1 Exhibit A)(Erickson, Amy) (Entered: 08/20/2024) |
| 08/21/2024 | 204 | MINUTE ORDER re: 201 Response to 192 First MOTION for Attorney Fees and 202 Response to 191 Motion for Attorney Fees and Costs. The Responses at ECF Nos. 201 and 202 are STRICKEN for failure to comply with this Court's Uniform Civil Practice Standards. Specifically, CNS Civ. Practice Standard 10.1(c) which can be found here. The Court grants the Plaintiffs to and including 8/27/2024 to refile page–compliant responses. By Judge Charlotte N. Sweeney on 8/21/2024. Text Only Entry (cnsja, ) (Entered: 08/21/2024) |
| 08/27/2024 | 205 | RESPONSE to 192 First MOTION for Attorney Fees *OPPOSED* filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Attachments: # 1 Exhibit A)(Erickson, Amy) (Entered: 08/27/2024) |
| 08/27/2024 | 206 | RESPONSE to 191 MOTION for Attorney Fees *and Costs* filed by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Attachments: # 1 Exhibit A)(Erickson, Amy) (Entered: 08/27/2024) |
| 08/27/2024 | 207 | OBJECTION to 195 Proposed Bill of Costs,, by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. Any reply is due within 14 days. (Attachments: # 1 Exhibit A)(Erickson, Amy) (Entered: 08/27/2024) |
| 08/29/2024 | 208 | TRANSCRIPT ORDER FORM re 198 Notice of Appeal by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota (Hostetler, Courtney) (Entered: 08/29/2024) |
| 08/29/2024 | 209 | LETTER TO USCA and all counsel certifying the record is complete as to 198 Notice of Appeal filed by Mi Familia Vota, Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado. A transcript order form was filed stating that the necessary transcript is already on file. ( Appeal No. 24–1328). Text Only Entry. (sphil, ) (Entered: 08/29/2024) |
| 09/03/2024 | 210 | REPLY to Response to 192 First MOTION for Attorney Fees *OPPOSED* filed by Defendant Ashley Epp. (Epp, Ashley) (Entered: 09/03/2024) |
| 09/03/2024 | 211 | REPLY to 203 Objection to Proposed Bill of Costs, by Defendant Holly Kasun. (Wynne, Michael) (Entered: 09/03/2024) |
| 09/03/2024 | 212 | REPLY to Response to 191 MOTION for Attorney Fees *and Costs* filed by Defendant Shawn Smith. (Hays, Jessica) (Entered: 09/03/2024) |
| 12/11/2024 | 213 | MOTION to Withdraw as Attorney *of Record (K. Stock)* by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. (Stock, Kristin) (Entered: 12/11/2024) |
| 12/12/2024 | 214 | ORDER granting 213 Motion to Withdraw as Attorney of Record (K. Stock) by Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, Mi Familia Vota. Attorney Kristin M. Stock is withdrawn. By Judge Charlotte N. Sweeney on 12/12/2024. Text Only Entry(cnsja, ) (Entered: 12/12/2024) |
| 12/12/2024 | 215 | MINUTE ORDER: Upon review of the filings in this case, the parties are ordered to review this Court's Uniform Civil Practice Standards. Specifically, CNS Civ. Practice Standard 10.1(a) which can be found here. The parties' future filings shall be made in Arial 12–point font. The Court may summarily strike future filings that do not comply. By Judge Charlotte N. Sweeney on |

12/12/2024. Text Only Entry (cnsja, ) (Entered: 12/12/2024)

7.      LWVCO's members are civically active and highly-informed about voter issues. That LWVCO members have reported concerns based on their own experience with visits from USEIP agents is significant, since many voters who are less active or aware of their rights are likely to find these visits even more intimidating.

8.      USEIP's activities are a direct assault on our organization's foundational mission to help new, young, and/or vulnerable voters exercise their rights to participate in democracy.  We have a duty to ensure that the thousands of voters we have registered and educated to vote are able and willing to confidently and safely participate in democracy on and around Election Day.

9.      Intimidating voters at their doorstep about their voting history will have deleterious impacts on voter participation.  In particular, new voters (such as young people, new citizens, and others who have just become eligible to vote) who are especially vulnerable may opt to disengage from the voting process rather than face intimidating visits from USEIP agents.

10.      USEIP's activities also jeopardize voter confidence that their vote will be counted, and raise suspicions about elections generally. As a result of USEIP's activities, voters may question the validity of the political process. This directly harms LWVCO's mission, which is to increase voter engagement and confidence.

11.      USEIP's activities also materially damage LWVCO's mission by forcing LWVCO to divert resources away from its core functions and toward activities that combat disinformation disseiminated and voter intimidation caused by USEIP.

12.      At this time in the election cycle, LWVCO's priority is voter education  on current legislative issues and the upcoming primary and general election processes to encourage high voter turnout. With USEIP's recent voter intimidation efforts, LWVCO is concerned that voters will be

8.      Because of the long history of racial discrimination aimed at Black Americans—including in connection with the exercise of their right to vote—this door-to-door intimidation campaign is extremely threatening to Black Coloradans, including NAACP members.

9.      Black Americans have continually been subject to efforts by White supremacists and others seeking to suppress the Black vote through, among other things, Jim Crow laws. To this day, threats and acts of violence are used to actively dissuade Black voters from exercising their Constitutional right to vote.  USEIP's door-to-door campaign is unquestionably a continuation of these voter suppression tactics plaguing Black Americans.

10.      In addition, while the NAACP has previously raised concerns about voter intimidation taking place at or near polling places, USEIP's actions are even more drastic and alarming in that they are showing up at the *homes* of Black and other voters—at times with visible weapons.  It is, indeed, a return to the depths to which those who seek to thwart democracy are willing to sink in order to intimidate Black voters.  USEIP's message is clear – Black voters are not safe from harassment and potential violence even in their own homes.  This makes USEIP's visits particularly intimidating and traumatic for Black Americans.

11.      USEIP's door-to-door campaign directly harms the NAACP's ability to carry out its mission of ensuring that every American has access to free, open, equal, and protected elections. By intimidating and threatening voters at their doorsteps, USEIP's activities make it less likely that Black Americans will turn out to vote in Colorado.

**Diversion of Resources and Frustration of Mission**

12.      As a consequence of USEIP's activities, the NAACP will now be forced to  redirect resources that could have been used elsewhere to further the NAACP's mission to instead address the voter intimidation being carried out by USEIP and related parties.

3

13.     The NAACP/NAACP Colorado has already exhausted resources actively monitoring voter intimidation efforts in Colorado by speaking to organizational partners in the voting rights advocacy community to understand the scope of USEIP's activities, strategizing about how to combat USEIP's efforts, and monitoring safety concerns expressed by the Black community.

14.     Further, in response to USEIP's activities, the NAACP anticipates having to shift both personnel and financial resources towards combatting USEIP's voter intimidation efforts. This involves time and money that would otherwise be spent on activities central to the NAACP's mission.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this _____ day of March, 2022

3/2/2022

DocuSigned by:

*Portia Prescott*

DEC709207EAF49E...

Portia Prescott

to cast a ballot. While USEIP is sending potentially armed agents to visit people based on their voting history or voting record, MFV will not be able to focus on voter drives and voter education. Instead, MFV will be faced with the task of meaningfully addressing voters' fears and must now balance its voter engagement goals with its strong concern with keeping people in their community safe.

### Diversion of Resources and Frustration of Mission

11.     As a consequence of USEIP's activities, MFV is now redirecting its resources to address voter intimidation that could have been used elsewhere to further our mission.

12.     MFV has been actively monitoring voter intimidation efforts in Colorado by speaking to organizational partners in the voting rights advocacy community to understand the scope of USEIP's activities, strategizing about how to combat USEIP's efforts, and monitoring safety concerns expressed by the Latino community. The time that MFV staff has and will continue to spend responding to USEIP's activities is time that otherwise would have been spent on activities central to our core mission.

13.     In response to USEIP's voter intimidation campaign, MFV will have to mobilize to disperse accurate information and respond to community concerns about voter safety.  Responding to voter intimidation has impacted and will continue to impact MFV's operations and its 2022 strategic plan. This annual strategic plan considers what issues are salient to the Colorado Latino community, describes how MFV's resources will be allocated in response, and sets forth goals for voter engagement. Ordinarily, this strategic plan is focused on ballot-level issues, how to build voter confidence and engagement, and spreading awareness about upcoming elections and candidates. Now, MFV has to divert resources away from these core issues to combat USEIP voter intimidation.

DocuSign Envelope ID: 2FBBF8D7-3A9E-45C3-961E-F24CC89B6121

14.     In terms of the strategic planning, these diverted resources come in the form of the hours spent by MFV staff members reaching out to organizational partners and members of the community to understand the scope of the issue, in strategizing how to respond in the upcoming year, and in revising the strategic plan to cover these updates. The resources diverted are not just the hours spent on strategizing how to address and mitigate the effect of USEIP's efforts—the resources diverted include the hours lost on the issues central to MFV's core mission.

15.     But it is not just the time lost on strategic planning around combating USEIP's efforts.  MFV staff members will also lose time in several other areas as well.  First, MFV must revise the scripts used by volunteers during voter outreach to include responses to community concerns about voter safety and must train volunteers on these new scripts.  Second, MFV must revise voter engagement literature to explain what to do if a voter experiences voter intimidation. The time spent revising these materials and training volunteers is time that would have otherwise been spent advancing MFV's core mission.

16.     Door-to-door canvassing is an important way in which we are able to share information about how to vote with people in our community. But now voters have reason to be afraid to speak with door-to-door canvassers because of the voter intimidation being carried out by USEIP, which will undermine our voter education outreach. In addition, we are adding new training for our canvassing team so that they are equipped to respond to voters' fears and hesitation about voting due to their knowledge of the USEIP intimidation campaign.

17.     But more damaging than the time MFV staff and volunteers have diverted is the time *voters* have and will continue to divert towards responding to USEIP intimidation.  This is time that otherwise may have been spent learning about issues relevant to their community, about

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00581-PAB

Colorado Montana Wyoming
State Area Conference of the NAACP,
League of Women Voters of Colorado, and
Mi Familia Vota,

       Plaintiffs,

v.

United States Election Integrity Plan, Shawn Smith,
Ashley Epp, and Holly Kasun,

       Defendants.

---

## PLAINTIFFS' NOTICE OF WITHDRAWAL OF THEIR MOTION
## FOR A PRELIMINARY INJUNCTION (Dkt. No. 5.)

---

Plaintiffs Colorado Montana Wyoming State Area Conference of the NAACP, League of

Women Voters of Colorado, and Mi Familia Vota ("Plaintiffs") hereby withdraw their Motion for

Preliminary Injunction (Dkt. No. 5) and respectfully request that the hearing set for June 2, 2022

at 8:30 a.m. be vacated.


Dated:  May 12, 2022               LATHROP GPM LLP

                                By /s/Amy Erickson
                                Casey Breese (#51448)
                                Casey.breese@lathropgpm.com
                                Jean Paul Bradshaw
                                Jeanpaul.bradshaw@lathropgpm.com
                                Dion Farganis
                                Dion.farganis@lathropgpm.com

1

Reid Day
Reid.day@lathropgpm.com
Brian A. Dillon
Brian.dillon@lathropgpm.com
Amy Erickson (#54710)
Amy.erickson@lathropgpm.com
1515 Wynkoop Street, Suite 600
Denver, CO 80202
Telephone: (720) 931-3200

Courtney Hostetler
chostetler@freespeechforpeople.org
John Bonifaz
jbonifaz@freespeechforpeople.org
Ben Clements
bclements@freespeechforpeople.org
Ron Fein
rfein@freespeechforpeople.org
FREE SPEECH FOR PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459
Telephone: (617) 249-3015

*ATTORNEYS FOR Plaintiffs Colorado Montana
Wyoming State Area Conference of the NAACP,
League of Women Voters of Colorado, and
Mi Familia Vota*

48851247v1

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Amy Elizabeth Erickson | amy.erickson@lathropgpm.com, claudia.neal@lathropgpm.com |
| Ben Clements | bclements@freespeechforpeople.org |
| Brian Andrew Dillon | brian.dillon@lathropgpm.com, kristina.procai@lathropgpm.com |
| Casey Carlton Breese | casey.breese@lathropgpm.com, brandi.pruett@lathropgpm.com, cheyenne.serrano@lathropgpm.com |
| Courtney Marie Hostetler | chostetler@freespeechforpeople.org |
| Jean Paul Bradshaw | jeanpaul.bradshaw@lathropgpm.com |
| Jessica Lynn Hays | jessica@reischlawfirm.com |
| R. Scott Reisch | scott@reischlawfirm.com, cassandra@reischlawfirm.com, Matthew@reischlawfirm.com, Rob@reischlawfirm.com |
| Reid Kelly Day | reid.day@lathropgpm.com, kirsten.hollstrom@lathropgpm.com |
| Ronald Andrew Fein | rfein@freespeechforpeople.org |
| John C. Bonifaz | jbonifaz@freespeechforpeople.org |

s/Claudia Neal

48851247v1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00581-PAB

Colorado Montana Wyoming State Area Conference of the NAACP,
League of Women Voters of Colorado, and Mi Familia Vota,

      Plaintiff,

v.

United States Election Integrity Plan, Shawn Smith,
Ashley Epp, and Holly Kasun,

      Defendants.

---

### DECLARATION OF YVETTE ROBERTS

---

      Pursuant to 28 U.S.C. § 1746, I, Yvette Roberts, hereby declare on my own knowledge and belief as follows:

1. I am a registered Colorado voter.

2. I currently reside in Grand Junction, Mesa County, Colorado. I have lived in Colorado my whole life, but in different cities, including in Montrose, Salida, and Alamosa.

3. I am a 70-year-old retired teacher and journalist. Over the years, I taught journalism, history, economics, and social studies.

4. I identify as mixed race, as my father identified as Native American.

5. After the 2020 election, a man and a woman affiliated with the group United States Election Integrity Plan came to my home and began asking me invasive and personal questions.

6.    The man was large and was wearing a white shorts and what appeared to be a golf shirt. The woman had on a white t-shirt and a hat. They wore official-looking badges. The man asked most of the questions, while the woman stayed back.

7.    When they appeared at my doorstep, they introduced themselves and implied that they were there in an official capacity. They told me that they had "information from the state," and that "the state sent it to us."

8.    They asked a series of questions including whether I was a resident of Colorado, whether I was a registered voter, whether I was a United States citizen, who in the household is a citizen, whether I was the only voter of my household, whether I had voted in the last election, and how I voted in the last election.

9.    I was particularly alarmed by the questions about whether I was the only member of my household and how I had voted in the last election.  First, I did not want to tell the inquiring man that I was alone in the house.  Second, as a former social studies teacher and journalist, I was aware that some of the information about which they were inquiring was publicly available and that they may have gotten it from purchasing a voter roll. However, they made it seem as if they were at my house in an official capacity, and they were asking information they are not entitled to know. They were not entitled to know *how* I voted in the last election.

10. As the questions grew more invasive and I grew more unsettled, I asked them to leave my property.

11. As they began to leave, they continued to say things to me. I couldn't hear everything they said. I did not engage, stating only that I believed their actions could be considered illegal and voter intimidation.

12. In the past, other canvassers and solicitors have come to my door. This is the first time I can recall feeling intimidated by a canvasser or solicitor who approached my home. More specifically, previous canvassers or solicitors, in contrast to the pair from United States Election Integrity Plan, did not ask the same type of invasive personal questions such as demanding to know who I lived with, whether I was a citizen, if I had a right to be here, and asking how I turned in my ballot.

13. Since receiving the visit from United States Election Integrity Plan, it has been on my mind. More specifically, I had concerns about what they intended to do with the information. I wondered about if I just asked them to leave, if there are going to be repercussions. It made me feel intimidated about speaking out; I wondered if my name is written somewhere now, and if I will get a visit from them in the future if I speak out. But at the same time, I know I have to soldier on. I always tell my students it's important to register and to vote.

14. Because I was so concerned about United States Election Integrity Plan's actions, including the actions of the pair that came to my door, I lodged a complaint with the Office of the Colorado Secretary of State.


I declare under penalty of perjury that the foregoing is true and correct.

Yvette Roberts


Executed on December 22, 2022 in Grand Junction, Colorado.


3

30

brandished firearms, took photographs of voters' home, and represented or implied to voters that they were associated with the government. The Individual Defendants were each intimately involved in coordination efforts for USEIP.

Plaintiffs seek an Order from the Court: (a) declaring that the door-to-door voter intimidation campaign organized by the Individual Defendants constitutes unlawful voter intimidation in violation of Section 11(b) of the Voting Rights Act and the Ku Klux Klan Act; (b) ordering the Individual Defendants to cease and desist from coordinating and organizing visits to voters homes in order to questions voters or household members about mail-in ballots, alleged voters fraud, or otherwise intimidate voters from voting (including by mail); (c) ordering the Individual Defendants to cease and desist from taking photographs of voters' residences or vehicles, instructing or encouraging anyone to take photographs of voters' residences or vehicles, and maintaining databases of voters' residences or their vehicles, and to submit an affidavit to the Court attesting to their deletion of the same; (d) ordering the Individual Defendants to cease and desist from instructing or encouraging anyone to carry weapons during interactions with voters; and (e) ordering the Individual Defendants not to engage in other actions that threaten voters for having voters in past election or intimidate voters from voting in future elections.  Plaintiffs also seek an award of their attorneys' fees and costs.

### Defendants

Defendants deny any liability for the factual scenario that led to the filing of this case and further deny that they have intimidated, coerced, or threatened any Colorado voter as alleged by Plaintiffs. To carry their burden on counts 1 and 2 under 52 U.S.C. § 10307(b), Plaintiffs must prove that Defendants acted or attempted to intimidate, threaten

3

61850080v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Charlotte N. Sweeney**

Civil Action No. 1:22-cv-00581-CNS-NRN                Date: January 16, 2024

Case Title: *Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, and Mi Familia Vota vs. United States Election Integrity Plan, Shawn Smith, Ashley Epp, and Holly Kasun*

**DEFENDANTS KASUN & EPP WITNESS LIST**

| WITNESS & DATE (MAY / WILL) | | PROPOSED LENGTH OF TESTIMONY | | | | | |
|---|---|---|---|---|---|---|---|
| Shawn Smith (Will Call) | | Direct: | 1 hr | Cross: | | Total: | |
| Ashley Epp (Will Call) | | Direct: | 1 hr | Cross: | | Total: | |
| Holly Kasun (Will Call) | | Direct: | 1 hr | Cross: | | Total: | |
| Jeff Young (Will Call) | | Direct: | 1 hr | Cross: | | Total: | |
| Tara Menza (Will Call) | | Direct: | 30 min | | | | |
| Karen Kennedy (Will Call) | | Direct: | 1 hr | | | | |
| Charity McPike (Will Call) | | Direct: | 1 hr | | | | |
| Andrea Nagy (May Call) | | Direct: | 30 min | | | | |
| Adriana Cuva (May Call) | | Direct: | 30 min | | | | |
| Rick Costa (May Call) | | Direct: | 30 min | | | | |
| Rhonda Braun (May Call) | | Direct: | 1 hr | | | | |
| Wayne Williams (May Call) | | Direct: | 30 min | | | | |
| SOS Jena Griswold (Will Call) | | | | Cross: | 1 hr | Total: | |
| Professor Atiba Ellis (Will Call) | | | | Cross: | 2 hr | Total: | |
| Portia Prescott (Will Call) | | | | Cross: | 1 hr | Total: | |
| Yvette Roberts (Will Call) | | | | Cross: | 1 hr | Total: | |
| Salvador Hernandez (Will Call) | | | | Cross: | 1 hr | Total: | |
| Beth Hendrix (Will Call) | | | | Cross: | 1 hr | Total: | |
| Rep of the Colorado AG's Office (May Call) | | | | Cross: | 1 hr | Total: | |
| Rep of the Adams County Clerk and Recorders Office (May Call) | | | | Cross: | 30min | Total: | |
| Representative of the Douglas County Clerk and Recorders Office (May Call) | | | | Cross: | 30min | Total: | |
| Representative of the El Paso County Clerk and Recorders Office (May Call) | | | | Cross: | 30min | Total: | |

Dated:  January 16, 2024

s/ Ashley Epp

_____

Ashley Epp
asheinamerica@protonmail.com

Holly Kasun
hollyataltitude@protonmail.com

parties. No motion to compel discovery was ever filed with the Court, and the Court has not issued any order finding that Plaintiffs failed to comply with any discovery request or obligation.

In bringing this motion, the *pro se* Defendants contend that LWVCO "made two materially damaging misrepresentations of evidence meant to substantiate its diversion of resources damages claim." (ECF No. 128 at 17.) Specifically, they argue the Safety Plan and whitepaper created and produced by LWVCO are "irrelevant" to the claims in this lawsuit because neither document specifically mentions Defendants or this case and because the whitepaper was created after USEIP ended their canvassing efforts.[6] (*Id.*) Of course, documents do not have to specifically mention parties or the case to be relevant to the action, and Defendants are entitled to cross examine Ms. Hendrix (of LWVCO) at trial regarding the aforementioned documents and related issues. Plaintiffs are confident that no misrepresentations were made by LWVCO or any other Plaintiff.

Finally, although Plaintiffs seek to recover their attorneys' fees under applicable law, they are not seeking compensatory damages. Plaintiffs have no obligation to produce documents to support a damages claim they have not asserted.

---

[6] Although the *pro se* Defendants now claim in connection with this motion that USEIP ended its canvassing efforts (ECF No. 128 at 17), Defendant Epp also recently represented to the Court that "Plaintiffs assertions that USEIP associates have stopped their activities in Colorado is also false. USEIP associates are actively engaged in all 64 counties." (ECF No. 108 at 23.)

Defendant Epp then moves to exclude references to Defendants' presence at the United States Capitol on January 6, 2021. She argues that January 6 is irrelevant and unfairly prejudicial because the riot occurred months before USEIP conceived the idea of voter canvassing. ECF No. 140 at 3–4. Plaintiffs counter by arguing that they will introduce evidence at trial to demonstrate that, following the 2020 Presidential Election—Defendants founded USEIP and developed and implemented a plan to send USEIP agents to voters' homes across Colorado. ECF No. 149 at 4.

As to relevance, the Court finds that this evidence clearly meets the "low bar" for relevant evidence. *United States v. Riggs*, 2024 WL 2873897, at *11 (10th Cir. June 7, 2024) ("Relevance is a low bar."). As to prejudice, Defendant Epp's argument misses the mark. Relevant evidence is almost always prejudicial; the test is whether it is unfairly prejudicial. *See  United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983) ("Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403." (citation and quotations omitted)). The topic of January 6 does not rise to the level of unfair prejudice. This is especially true in a bench trial. *See Kienlen*, 349 F. App'x at 351 ("Other circuits have held, and we agree, that excluding evidence in a bench trial under Rule 403's weighing of probative value against prejudice [is] improper." (citation and quotation marks omitted)).

**F.    Pro Se Defendant Kasun's First Motion in Limine to Exclude Certain Evidence and Admit Certain Evidence (ECF No. 142)**

Defendant Kasun's motion in limine can be grouped into three requests. First, she moves to exclude under Federal Rules of Evidence 401 and 403 any evidence concerning (a) the January 6, 2021 capitol riots; (b) guns, carrying guns, or brandishing firearms; and (c) race and racism. Second, she moves to exclude under Rule 403 any testimonial evidence from USEIP's Federal Rule of Civil Procedure 30(b)(6) deposition. Third, she moves to admit under Federal Rule of Evidence 106 the unredacted versions of the redacted emails Plaintiffs disclosed during discovery from the Colorado Secretary of State.[9] The Court addresses each request in turn.

The Court has already ruled that the topic of January 6 meets the low bar for relevant evidence. *See Riggs*, 2024 WL 2873897, at *11 ("Relevance is a low bar."). And because this is a bench trial, any Rule 403 concerns are severely diminished. *Kienlen*, 349 F. App'x at 351. The same reasoning applies to the topics of firearms and race or racism. Plaintiffs have sufficiently justified the relevance of these topics, *see* ECF No. 148 at 4–6, and the Court agrees. Again, relevance is not a high hurdle. Defendant's request is denied.

The Court also denies Defendant Kasun's request to exclude under Rule 403 her testimonial evidence she provided as USEIP's Rule 30(b)(6) deponent. Although the Court dismissed USEIP as party after finding that USEIP, as an unincorporated

---

[9] Like Defendant Epp, Defendant Kasun also moves to admit Tara Menza as a witness and Plaintiffs' "Safety Plan," identified by Bates number LWVCO0000112. ECF No. 142 at 2. As explained above, the Court has already ruled that Ms. Menza will be allowed to testify and that the "Safety Plan" document may be admitted at trial. *Id.* The Court therefore denies these requests as moot.

16

association, could not be considered a "person" under 52 U.S.C. § 10307(b) or 42 U.S.C.
§ 1985(3), *see* ECF No. 84, that does not mean that Plaintiffs may not use Defendant
Kasun's sworn deposition testimony to impeach her.[10] *See* Fed. R. Civ. P. 32(a).

Finally, Defendant Kasun argues that the rule of completeness requires the Court
to admit the unredacted versions of the redacted emails Plaintiffs disclosed during
discovery from the Colorado Secretary of State. ECF No. 142 at 6–7. Plaintiffs ignore the
rule of completeness argument entirely and instead reiterate their argument that
documents that Defendants failed to produce are inadmissible. ECF No. 148 at 7–8. As
explained above, the Court will not admit documents at trial that have never been
produced or disclosed to the other side, but with respect to redacted documents, the Court
will adhere to the rule of completeness and will admit the unredacted emails if Plaintiffs
seeks admission of the redacted emails. *Echo Acceptance*, 267 F.3d at 1089–90; *see
also* Fed. R. Evid. 106.

Accordingly, Defendant Kasun's motion in limine is granted in part and denied in
part without prejudice.

## V.    CONCLUSION

Consistent with the foregoing analysis, the Court ORDERS:

(1)    Defendant Shawn Smith's Motion in Limine, ECF No. 99, is DENIED;

(2)    Pro Se Defendants' Emergency Motion for Sanctions for Failure to
Disclose Under Federal Rule of Civil Procedure 26 Pursuant to Rule 37,
ECF No. 128, is DENIED;

---

[10] Plaintiffs confirmed in their response that they do not intend to offer the Rule 30(b)(6) deposition testimony
as substantive evidence. ECF No. 148 at 4.

(3)    Pro Se Defendants' Counterclaim for Abuse of Process, ECF No. 134, is
       DENIED;

(4)    Ashley Epp's Pro Se Motion in Limine, ECF No. 140, is GRANTED in part
       and DENIED in part;

(5)    Plaintiffs' Motion in Limine, ECF No. 141, is GRANTED in part and
       DENIED in part; and

(6)    Pro Se Defendant Kasun's First Motion in Limine to Exclude Certain
       Evidence and Admit Certain Evidence, ECF No. 142, is GRANTED in part
       and DENIED in part.


       DATED this 11th day of June 2024.

                                        BY THE COURT:


                                        _____
                                        Charlotte N. Sweeney
                                        United States District Judge

18

38

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Charlotte N. Sweeney**

Civil Action No. 1:22-cv-00581-CNS-NRN                    Date: July 12, 2024

Case Title: *Colorado Montana Wyoming State Area Conference of the NAACP, League of Women Voters of Colorado, and Mi Familia Vota vs. Shawn Smith, Ashley Epp, and Holly Kasun*

**DEFENDANT HOLLY KASUN'S CONDENSED FINAL TRIAL WITNESS LIST**

| WITNESS & DATE (MAY / WILL) | PROPOSED LENGTH OF TESTIMONY | | |
|---|---|---|---|
| Holly Kasun (Will Call) | Direct: 3 hr | Cross: ___ | Total: ___ |
| Yvette Roberts (Will Call) | Direct: ___ | Cross: 1 hr | Total: ___ |
| Salvador Hernandez (Will Call) | Direct: ___ | Cross: 1 hr | Total: ___ |
| Ashley Epp (Will Call) | Direct: 3 hr | Cross: ___ | Total: ___ |
| Shawn Smith (Will Call) | Direct: 1 hr | SCross: ___ | Total: ___ |
| Amanda Carlson (May Call) | Direct: 1 hr | Cross: ___ | Total: ___ |
| Jeff Young (Will Call) | Direct: 4 hr | Cross: ___ | Total: ___ |
| Tamara Nations (Will Call) | Direct: 2 hr | Cross: ___ | Total: ___ |
| Tara Menza (Will Call) | Direct: 30 min | Cross: ___ | Total: ___ |
| Karen Kennedy (May Call) | Direct: 30 min | ___ | ___ |
| Eric Maulbetsch (May Call) | Direct: 30 min | ___ | ___ |
| Melody Peotter (Will Call) | Direct: 1 hr | ___ | ___ |
| Karen Kennedy (Will Call) | Direct: 30 min | Cross: ___ | Total: ___ |
| Portia Prescott (Will Call) | Direct: ___ | Cross: 2 hr | Total: ___ |
| Beth Hendrix (Will Call) | Direct: ___ | Cross: 2 hr | ___ |
| Representative of the Colorado Attorney General's Office, Janet Drake (May Call) | Direct: ___ | Cross: 30 min | Total: ___ |
| Melody Peotter (May Call) | Direct: 30 min | Cross: ___ | Total: ___ |

| Eric Maulbetsch (May Call) | Direct: ____ | Cross: 30 min | Total: ____ |
|---|---|---|---|
| Dr. Douglas Frank (May Call) | Direct: ____ | Cross: 30 min | Total: ____ |
| Chris Beall (Will Call) | Direct: ____ | Cross: 30 min | Total: ____ |

Defendant Holly Kasun anticipates calling Professor Atiba Ellis and Yvette Roberts as adverse witnesses as part of her case in chief in the event Plaintiffs do not call them during their direct case.


Dated:  July 12, 2024

GREGOR WYNNE ARNEY, PLLC

*/s/ Michael J. Wynne*
Michael J. Wynne, (TX # 00785289)
mwynne@gwafirm.com
Cameron Powell, (CO # 00459020)
cpowell@gwafirm.com
GREGOR WYNNE ARNEY, PLLC
4265 San Felipe, Suite 700
Houston, Texas 77027
Telephone: (281) 450-7403

*ATTORNEYS FOR Defendant Holly Kasun*


**CERTIFICATE OF SERVICE**

I certify that on this date, July 12, 2024, I served a true and correct copy of the foregoing on all counsel and pro se parties by notice of electronic filing.

*/s/ Michael J. Wynne*
Michael J. Wynne

22-cv-00581-CNS-NRN   Bench Trial - Day 1    07/15/2024   124

 1            THE COURT:  I'll give him a short rope.  Overruled.

 2            MR. DILLON:  Thank you.  Can you read back the

 3    question, please?

 4       (The requested portion was read back.)

 5    Q.  (By MR. DILLON) And at those events you've talked about

 6    election integrity issues, correct?

 7    A.  That's correct.  That's why I was invited to speak.

 8    Q.  And isn't it true that at this event you stated publicly

 9    that you had in your possession evidence of criminal conduct

10    by the Secretary of State and her staff?

11            MR. REISCH:  Objection, relevance, 401, 403.

12            THE COURT:  Well, 403 really doesn't come into play

13    with a trial to the Court.  I'll allow a short rope to explore

14    what this is about.

15            MR. DILLON:  Thank you.

16    A.  Could you repeat the question, please?

17    Q.  (By MR. DILLON) Isn't it true at this event you stated

18    publicly that you have in your possession evidence of criminal

19    conduct by the Secretary of State and her staff?

20    A.  Which event?

21    Q.  At this FEC United event that we've been discussing.

22    A.  I've been to several.  Are you talking about specifically

23    at The Rock in Castle Rock?

24    Q.  That probably is the one, yes.

25    A.  Okay.  Yes .

                    Sarah K. Mitchell, RPR, CRR

1    Q.   Okay.  When was that event?

2    A.   I believe February of '22.

3    Q.   Of '22?

4    A.   Correct.  So long after canvassing was completed.

5    Q.   Okay.  And at this event you also stated that you believe

6    anyone involved in election fraud deserves to hang, correct?

7               MR. REISCH:  Objection, relevance.

8               THE COURT:  Overruled.

9               MR. WYNNE:  I'm going to object based on hearsay.

10              THE COURT:  Overruled.  You may answer.

11   A.   I believe what I stated was much more extensive than that.

12   Q.   (By MR. DILLON) Did you say --

13   A.   Do you have a full quote?

14              MR. DILLON:  Look, Your Honor, we have the video.  I

15   would like to play the video so that Your Honor and the Court

16   can hear Mr. Smith's own words at this event.  I think it's

17   incredibly important, and I think that video should be entered

18   into evidence.

19              THE COURT:  Is there an objection?

20              MR. WYNNE:  Yes.  I object based on hearsay as to

21   both Ms. Kasun and Ms. Epp since it's not a statement by them

22   as parties.

23              THE COURT:  All right.  Mr. Reisch?

24              MR. REISCH:  I would object as to lack of foundation,

25   authenticity.

                    Sarah K. Mitchell, RPR, CRR

 1             THE COURT:  All right.  I don't know anything about

 2    the video.  Why don't we try asking him what he said?

 3             MR. DILLON:  Well, that is what I've been doing.

 4    Q.  (By MR. DILLON) So did you say --

 5             THE COURT:  No, let's just ask him what he said.

 6             MR. DILLON:  Sure.

 7    Q.  (By MR. DILLON) Did you say that anyone involved in

 8    election fraud --

 9             THE COURT:  Mr. Dillon, you're not hearing me.  Ask

10    the witness what he said.  I'm not allowing you to show me the

11    video.  It seems to me he remembers what he said, so let's

12    just ask him.

13    Q.  (By MR. DILLON) What did you say at this February 2022 FEC

14    United event?

15    A.  Well, I said a lot, but what I think you're asking about

16    is I specifically said I have in my possession evidence of

17    violations of election law by Secretary of State Griswold,

18    which I did and which I provided to the Colorado Attorney

19    General under sworn affidavit, my own sworn affidavit.  I

20    stated I am in favor of due process.  I stated I've been

21    accused of advocating violence.  I'm not advocating violence.

22    And I stated that I believe that anybody who is involved in

23    election fraud -- not voter fraud -- election fraud deserves

24    to hang .

25             And I said that because if you're involved in

                   Sarah K. Mitchell, RPR, CRR

22-cv-00581-CNS-NRN   Bench Trial - Day 1      07/15/2024   127

1  election fraud, then you are usurping the will and consent of

2  the people, and that is an act of treason, and there are

3  punishments under federal statute for treason, which have been

4  enacted by the federal government.  Hanging is one of the

5  methods of execution when treason has been found in a court of

6  law through due process.

7            But what your clients and now you repeatedly have

8  tried to do apparently is excerpt one aspect of that comment

9  from my statement.  My statement was intact.  It involved the

10 entirety of it.  I believe in due process.  I've supported

11 that my whole life.  So the idea that I would advocate for

12 some kind of extrajudicial action is a fantasy on the part of

13 your clients, and they helped create that with the media,

14 which did the same thing.  That was Kyle Clark.  That was Erik

15 Maulbetsch.  That was Quentin Young.  All deliberatively

16 excerpting my comments out of the context that surrounded them

17 and which was available to them and which is available to you.

18 Q.  So it's your testimony that your statements were taken out

19 of context?

20 A.  When you excerpt just that part and leave out that I

21 stated I am in favor of due process and I'm not advocating for

22 violence, yes.

23 Q.  Okay.

24 A.  And obviously.

25 Q.  After stating that anyone -- anyone involved in election

                    Sarah K. Mitchell, RPR, CRR

 1  fraud deserves to hang, is it true that you also stated

 2  sometimes the old ways are the best ways?

 3  A.   That's correct.  And I was talking about accountability,

 4  which we apparently lack in our state.

 5  Q.   Are you aware of anyone in the United States being

 6  executed by hanging for being found guilty of election fraud?

 7  A.   No.  I think the last hanging in the United States was in

 8  '96.

 9  Q.   Okay.  You're aware there's a fairly dark history in the

10  United States of hanging and lynching Native and

11  African-American persons?

12          MR. REISCH:  Objection, relevance.

13          THE COURT:  Sustained.

14          MR. DILLON:  Your Honor, I have no further questions.

15          THE COURT:  All right.  Cross-examination,

16  Mr. Reisch.

17          MR. REISCH:  Yes, Your Honor.  Thank you.  If I can

18  have just a moment to get set up here, please.

19          THE COURT:  Mr. Reisch, I assume you're doing your

20  full examination?

21          MR. REISCH:  That was my understanding from the

22  Court's order.

23          THE COURT:  Yes, okay.

24          MR. REISCH:  That I should respond and ask questions

25  I would have asked if he was my witness.

                    Sarah K. Mitchell, RPR, CRR

1   A.  It may not be.

2   Q.  Okay.

3   A.  Again, it's e-mail.  I wanted to be short and succinct.

4   Q.  When did you first learn the name United States Election

5   Integrity Plan?

6   A.  In my encounters with the organization that contacted me.

7   Q.  Who was that?

8   A.  My -- the plaintiffs' --

9   Q.  Okay.

10  A.  -- lead counsel.

11  Q.  Is that a counsel that's here today?

12  A.  Yes.

13  Q.  And they confirmed for you that it was USEIP canvassers

14  who had visited your home?

15  A.  It seemed logical given all this, the situation of how I

16  had interpreted the behavior.

17  Q.  Tell me more about that.

18  A.  Just as I mentioned before, they were locals, as far as I

19  knew.  That's how they had introduced themselves.  They had

20  been trained a little bit, I think maybe, or they had at least

21  prepared.

22  Q.  And that made them seem more likely to be USEIP than not?

23  A.  It seemed that they would belong to some kind of an

24  organization like that.  I didn't know which organization it

25  was.

                    Sarah K. Mitchell, RPR, CRR

1    right, ma'am?

2            THE COURT:  Mr. Reisch, let's go to a question

3    instead of your testimony, please.

4    Q.  (By MR. REISCH) You agree, ma'am, that you don't have a

5    right not to be offended?  Would you agree with me?

6    A.  I'm sorry.  I don't understand that question.

7    Q.  Yes.  You as an individual may hear things that you don't

8    like in the world.  Sometimes that happens, right?

9    A.  You bet.

10   Q.  Okay.  You don't have a right not to be offended.  Would

11   you agree with me?

12   A.  I don't have a right not to be offended.

13   Q.  To not be offended.  You can't go around in a little

14   bubble saying I don't want anything to offend me, right?

15   A.  Sure.

16   Q.  Okay.  Because that's what our First Amendment allows for,

17   unpopular ideas, correct?

18   A.  To a certain extent.

19   Q.  Okay.  We're not going to go through that again, but you

20   agree with me the First Amendment, people can say things that

21   you and your organization may not like, correct?

22           MS. STOCK:  Objection, asked and answered.

23           THE COURT:  Sustained.

24   Q.  (By MR. REISCH) You said you sent out your blast e-mail to

25   2,200 individuals, correct, ma'am?

                    Sarah K. Mitchell, RPR, CRR

1    A.   Yes.  Possibly more.

2    Q.   Okay.  And you received one person, unidentified, that

3    said they thought maybe somebody had made them feel

4    uncomfortable, correct?

5    A.   Yes.

6    Q.   Okay.  And you received two people that stated that they

7    thought that they supported what USEIP was doing, correct?

8    A.   Yes.

9    Q.   The person that felt uncomfortable, they're not on this

10   witness list, are they, ma'am?

11   A.   I don't know.

12   Q.   Well, as a lead plaintiff in this case, did you not look

13   and see who -- hey, do we have a member that we can call since

14   we're bringing the lawsuit on behalf of our members, that

15   maybe we should put a member on the witness list?

16   A.   I'm not advising my attorneys.

17   Q.   You never thought that, hey, I'm suing on behalf of my

18   membership, I should have a member here?

19   A.   Sir, the member that -- that presented herself to our

20   board members did not want to be identified due to fear of

21   reprisal.

22   Q.   Okay.  Well, you said that, and you talked about the

23   statements by Mr. Smith, right?

24   A.   Uh-huh.

25   Q.   And that was -- you stated specifically what concerns you

                     Sarah K. Mitchell, RPR, CRR

 1   that the volunteers never acted of their own volition on

 2   anything?

 3   A.   No.  Of course the volunteers acted on their own volition.

 4   That's part of volunteer management.  But the cofounders laid

 5   out the mission and purpose of the organization, and the

 6   volunteers were there to carry that out.

 7   Q.   That's your understanding?

 8   A.   Yes.

 9   Q.   I see.  So that sounds like a command-and-control

10   organization where somebody's in charge; is that right?

11   A.   Yes.

12   Q.   Okay.  I believe you said yesterday that when you filed

13   the complaint, it was because you wanted to stop intimidating

14   speech and actions of the defendants in USEIP; is that right?

15   A.   Yes.

16   Q.   Can you tell me what the intimidating speech of Holly

17   Kasun was?

18   A.   I don't know.  I believe that as a cofounder of the

19   organization, volunteers were carrying out the mission and

20   were at times intimidating.

21   Q.   You believe that because the media reports suggested that

22   to you?

23   A.   Yes.

24   Q.   What were the activities of Holly Kasun you were trying to

25   stop?

Sarah K. Mitchell, RPR, CRR

22-cv-00581-CNS-NRN   Bench Trial - Day 3      07/17/2024    611

1   Q.  Did you believe that the defendants were working on a

2   canvassing project with Sherrona Bishop of Mesa County?

3   A.  I don't know.

4           MR. POWELL:  That's all I have, Your Honor.

5           THE COURT:  Ms. Epp.

6           MS. EPP:  Your Honor, I have quite a bit.  Can I have

7   a quick bio break before we get started?

8           THE COURT:  Sure.  Let's see, why don't we go ahead

9   and take our morning break a little early.  Why don't we break

10  until ten after ten.  We'll be in recess.

11          THE COURTROOM DEPUTY:  All rise.  Court is in recess.

12      (Break was taken from 9:47 a.m. to 10:10 a.m.)

13          THE COURT:  Please have a seat.

14          Ms. Epp, you may proceed.

15                    CROSS-EXAMINATION

16  BY MS. EPP:

17  Q.  Good morning, Ms. Hendrix.

18  A.  Good morning.

19  Q.  You testified that you brought this case because of the

20  information you received from your national organization and

21  Free Speech For People, as well as because of news reports

22  stating that voters were intimidated; is that correct?

23  A.  Correct.

24  Q.  Do you recall when you decided to file this case?

25          MS. STOCK:  Objection, asked and answered.

                    Sarah K. Mitchell, RPR, CRR

22-cv-00581-CNS-NRN   Bench Trial - Day 3      07/17/2024   616

 1  A.  Yes.

 2          MS. EPP:  Okay.  Can we pull up Exhibit 84?  And this

 3  is admitted.

 4          THE COURTROOM DEPUTY:  I'm sorry.  When you say we,

 5  what table are you going to?  Plaintiffs are doing it?  Okay.

 6  Thank you.

 7  Q.  (By MS. EPP) Do you recall receiving this e-mail?

 8  A.  Yes.

 9  Q.  And can you read the first -- the first kind of three and

10  a quarter lines up to the first period in the fourth line?

11  A.  Hi, Beth.  I received an e-mail from you about people

12  coming door to door intimidating voters.  I received a knock

13  on my door a few weeks ago by someone from my community who

14  was -- who asked me about voting back in November.

15  Q.  And the next sentence as well.

16  A.  The person was very polite and not intimidating at all.

17  Q.  Did you speak with Ms. Menza after receiving this e-mail?

18  A.  No.  I believe I responded to her e-mail.

19  Q.  You responded to this e-mail?

20  A.  I'm not 100 percent sure.

21  Q.  Did you produce this e-mail in discovery?

22  A.  Yes.

23  Q.  You did?

24  A.  Yes.

25  Q.  So this e-mail was not turned over to us in discovery, so

 1    it's your testimony that you produced it, but your counsel

 2    didn't turn it over?

 3    A.   I don't know.

 4    Q.   In addition to Ms. Menza, you heard from Amanda Carlson

 5    September of 2021?

 6    A.   Yes.

 7    Q.   At the time of this exchange, Ms. Carlson was a member of

 8    The League and of USEIP; is that correct?

 9    A.   She stated she was a member of USEIP.  I don't actually

10    know if she was a member of The League.

11    Q.   Okay.  Can we pull up -- I just lost the number.  I

12    apologize -- Ms. Carlson's --

13            MR. REISCH:  I think it's 85.

14            MS. EPP:  85, thank you.

15    Q.   (By MS. EPP) Can we go to the next page.  So the second

16    page of this exhibit, Ms. Hendrix, at the bottom, Amanda

17    Carlson e-mails you September 7th.  Can you read the first

18    line?

19    A.   I'm a member of the Election Integrity Group, and I

20    certainly would not be a part of any group that intimidates

21    anyone.

22    Q.   Can you read the last -- I believe it's the last two

23    sentences starting with I am a retired.

24    A.   There we go.  Sorry.  I am a retired software engineer and

25    have many questions and no answers.  I would love to chat with

                    Sarah K. Mitchell, RPR, CRR



## News Release

**Media contact**
303-860-6903

Annie Orloff
annie.orloff@coloradosos.gov

Steve Hurlbert
steve.hurlbert@coloradosos.gov

**State of Colorado**
**Department of State**
1700 Broadway
Suite 550
Denver, CO 80290

**Jena Griswold**
Secretary of State

**Chris Beall**
Deputy Secretary of State

### In Response to Reported Unofficial Door-to-Door Canvassing of Colorado Voters, the Colorado Secretary of State's Office Reminds Voters of Their Constitutionally Protected Rights

Denver, September 9, 2021 - In response to reported unofficial door-to-door canvassing of Colorado voters, the Colorado Secretary of State's office issued the following reminders to voters:

1. If an individual comes to your door and requests information about your voting history or registration status, you are not required to answer.

2. Every voter's right to a secret ballot is constitutionally protected in Colorado. If a door-to-door canvasser asks how you voted in a particular race, you are not required to tell the canvasser how you voted.

3. Any claim that door-to-door canvassing is official business of the Colorado Secretary of State's office or the state of Colorado is false. No state or local election office in Colorado is conducting door-to-door voter participation surveys.

4. You have the right to request the name and credentials of door-to-door solicitors, as well as the organization they represent.

5. If you feel harassed or threatened, please reach out to local law enforcement or the Department of Justice at civilrights.justice.gov.

Several pieces of information in a voter record are considered a "public record," and the Secretary of State's office is required by law to provide this information to any member of the public who requests it. This information includes your full name, residential address, political party affiliation and date of affiliation, phone number (if provided by the voter), gender identity (if provided by the voter), birth year, and information about whether you have voted in prior elections. If you believe that you or a member of your household will be exposed to criminal harassment or bodily harm because your voter information is publicly available, you may elect to become a confidential voter. Confidential voters' registration information is NOT released to the public, nor is it obtainable through a download of the list of registered voters. To become a confidential voter, you must go to your local county clerk and recorder's office, fill out a voter confidentiality form, and pay a $5.00 fee. Refer to this list of county clerk and recorder offices for the necessary contact information.

Survivors of domestic violence, sexual offenses, or stalking may also consider enrolling in the Colorado Address Confidentiality Program. Voters who are part of this program will NOT have any of their voter information released to the public.

# # #

53



1:22-cv-581

**TRIAL EXHIBIT**

**50**

| | |
|---|---|
| **From:** | Teitelbaum, Aaron (USACO) |
| **To:** | Melissa Kessler |
| **Subject:** | [EXTERNAL] RE: Suspicious Election Related Activity |
| **Date:** | Friday, August 13, 2021 2:34:38 PM |

Hi Melissa,

I am stuck in a multi-hour hearing but I will call you back around 330. Sorry to be unavailable at this particular moment…

Aaron

**Aaron M. Teitelbaum**

Assistant United States Attorney

United States Attorney's Office | District of Colorado

1801 California Street, Suite 1600

Denver, CO 80202

Phone: (303) 454-0209

Email: aaron.teitelbaum@usdoj.gov

**From:** Melissa Kessler <Melissa.Kessler@SOS.STATE.CO.US>
**Sent:** Monday, August 2, 2021 9:34 PM
**To:** Teitelbaum, Aaron (USACO) <ateitelbaum@usa.doj.gov>
**Subject:** RE: Suspicious Election Related Activity

Aaron,

There was recently an article in a small, political publication that offers more insight on this group and their recruiting effort. It also indicates that this effort exists beyond Mesa County. So Much For "Needle Nazis"—Who's Going Door To Door Now? - Colorado Pols (Sorry for the inflammatory title! The information appears reliable. The publication itself… who knows?)

Melissa

**Melissa Belle Kessler**

Legal and Policy Director | Department of State
303.860.6947 (desk) | ███████████████

**From:** Teitelbaum, Aaron (USACO) <Aaron.Teitelbaum@usdoj.gov>
**Sent:** Friday, July 30, 2021 4:20 PM
**To:** Melissa Kessler <Melissa.Kessler@SOS.STATE.CO.US>
**Subject:** [EXTERNAL] RE: Suspicious Election Related Activity

Hi Melissa,

Nice to meet you. I will be attempting to fill Rebecca's massive shoes in the Election Officer role going forward. All of my contact info is below, ████████████████████████████ ███████████████ Please contact me any time.

As for the activity in Grand Junction: thanks very much for bringing this to our attention. I am going to confer with the FBI point of contact in Colorado for election matters and then we will get back to you asap. You are correct, this is the kind of thing that DOJ wants to hear about, so please don't hesitate to keep us in the loop about these sorts of things.

In the meantime, if you want to communicate something back to the complainants or to local SOS folks out in GJ, I would mention two things: (1) they should (obviously) call 911 if they feel their immediate safety is threatened, and (2) if people have any Ring doorbell footage of these encounters or the like, or recall any license plate numbers or other identifying information about these individuals, they should preserve that information for the time being.

I will be in touch next week as soon as I've had a chance to discuss with FBI.

Cheers,

Aaron

**Aaron M. Teitelbaum**

Assistant United States Attorney

United States Attorney's Office | District of Colorado

1801 California Street, Suite 1600

Denver, CO 80202

Phone: (303) 454-0209

Email: aaron.teitelbaum@usdoj.gov

---

**From:** Weber, Rebecca (USACO) <rweber@usa.doj.gov>

**Sent:** Friday, July 30, 2021 4:02 PM

**To:** Melissa Kessler <Melissa.Kessler@sos.state.co.us>

**Cc:** Teitelbaum, Aaron (USACO) <ateitelbaum@usa.doj.gov>

**Subject:** Re: Suspicious Election Related Activity

Melissa,

Thanks very much for passing this along. I've CCed the new District Election Officer, Aaron Teitelbaum.

Hope we can connect again soon!

- Rebecca

> On Jul 30, 2021, at 12:52 PM, Melissa Kessler <Melissa.Kessler@sos.state.co.us> wrote:

Hello – happy Friday!

I know you're not the election contact anymore, but I'm hoping you might forward this along to whoever has picked up the mantle from you.

The two attachments to this email describe some reports that we've been getting out of Grand Junction about a strange sort of in-person audit, wherein a group is traveling door-to-door and attempting to "confirm" residents' votes. We've reported this issue to the AG and the local DA. ████████████████████████████
████████████████████████████

Please let me know if you have any questions or if we can get you any additional information.

I hope you're doing well. We should get together soon - I would propose this weekend, but it looks like the weather is going to be bad!

**Melissa Belle Kessler**
Legal and Policy Director | Department of State
303.860.6947 (desk) | ██████████
melissa.kessler@sos.state.co.us
1700 Broadway, Suite 200
Denver, CO 80290

<image001.png>

<mime-attachment>

<mime-attachment>







**From:** Public Elections
**Sent:** Wednesday, June 23, 2021 3:14 PM
**To:** Caleb Thornton <Caleb.Thornton@SOS.STATE.CO.US>; Matt Domboski
<Matt.Domboski@SOS.STATE.CO.US>
**Subject:** FW: [EXTERNAL] Grand Junction voter intimidation effort
Thank you
Cheryl

**From:** Y. Roberts
**Sent:** Wednesday, June 23, 2021 12:22 PM
**To:** Public Elections <Public.Elections@SOS.STATE.CO.US>
**Subject:** [EXTERNAL] Grand Junction voter intimidation effort

I just had two people at my door holding a copy of the Mesa County registered voter
roll. They wore homemade badges reading Colorado Election ....something or other...
They introduced themselves. A tall older man and a short older woman in sporting
caps. Hers was brim-only.
He then began questioning me about the accuracy of the info on the voter roll. I told
him that all was public information available in the county courthouse. He shrugged
and said it came from the state. I said, "Yes. It goes from all the counties to the state."
As long as they kept themselves to the information of public record, I held my peace.
When they asked if I was only registered voter at this address, I was uncomfortable.
Then he told me that I'd voted in the last election (also a matter of public record) and
followed that with "Do you happen to remember how you returned that ballot? Did you
mail it, take it back in person? Use a dropbox?..."
That's when I interrupted him. I told him that it was a secret ballot; how I returned the
ballot was none of their business.
I added that what they were doing was intrusive and could be considered voter

intimidation which is illegal. I then stated they should leave my property.
This is a right-wing community. If these people or their group doesn't like/approve voters' responses, I think the chances are high that they will harass those voters in the traditional ways used here in the past--anonymous vandalism, threats of violence, threatening phone calls. And just the possibiliy of that quells political participation on the local level.
I'm interested in taking any legal action that can prevent this behavior of knocking on voters' doors to 'check' the validity of their right to vote. I will press charges, etc.
Yvette Roberts
970 434-3012







**From:** Public Elections
**Sent:** Thursday, July 29, 2021 12:34 PM
**To:** Matt Domboski <Matt.Domboski@SOS.STATE.CO.US>
**Subject:** FW: [EXTERNAL] Suspicious Activity

**From:** Debra Powell >
**Sent:** Thursday, July 29, 2021 12:11 PM
**To:** Public Elections <Public.Elections@SOS.STATE.CO.US>
**Subject:** [EXTERNAL] Suspicious Activity

Hi there,

I wanted to make someone aware of something that happened at my house in Grand Junction this morning. This is a copy of my FB post describing it. I would make an official complaint, but I have no idea who these gentlemen were. They wore tags pinned to their shirt that said "Concerned Citizen" or something to that effect. I was so appalled that I just closed the door on them. I got no additional information. I'm wondering if they are gearing up for some kind of "audit" a la Arizona's cyber-ninjas. So I'm sitting here in my house, minding my own business, scrolling. When a few minutes ago, the doorbell rings. John is sleeping. I usually have him answer the door, but I got it this time. Parked in front of my house is an older white car. It looked like there was someone sitting in the passenger seat and that maybe there was a dog also, but I didn't look that closely. I answered the door. There were two men there. An older man wearing a cap with an American Flag brim, and a somewhat younger guy, about my age. Younger, but not young... Anyway, the old man is holding a clipboard. He introduces himself and his son. I don't remember their names. But he says they're concerned about "cleaning up the voter rolls" and then proceeds to ask if John, I and mom voted in the last election. I slammed the door in their faces. They had a copy of the voter rolls and knew my name, John's name, mom's name. They weren't going to everyone's house. They drove away. I would be interested to know if anyone else in Grand Junction has had a similar experience or knows of something going on around this. ???

From:       Beth Hendrix [bhendrix@lwvcolorado.org]
Sent:       9/7/2021 8:45:29 PM
To:         'ewalton@engineer.com' [ewalton@engineer.com]
CC:         Karen Sheek (karensheek@gmail.com) [karensheek@gmail.com]
Subject:    RE: voter integrity

1:22-cv-581

**TRIAL EXHIBIT**

**76**

Hi Joani –
Thank you for your email – I appreciate hearing your thoughts!

We purposefully kept our email brief to avoid inflammatory language; I'm sorry you feel we failed in that regard.

The US Election Integrity Plan is apparently targeting certain people based on publicly-available voter data; USEIP volunteers are apparently often armed when going door to door to inquire as to how people voted in the 2020 election. Of course, feeling intimidated is subjective and an individual thing – what some people find intimidating, others don't. Personally, if an openly-armed person knocked on my door and asked me how I voted in the 2020 election, I'd feel intimidated, and I don't think I'm alone; I understand that you and others may not find that intimidating, but that doesn't change the fact that I and some do. And while I agree with you that checking and maintaining our state's voter rolls is very, very important, this should be done by or in collaboration with the associated county clerks, not individual citizens or groups of citizens who have access to only partial information due to privacy laws.

That is really unfortunate what you and your daughter experienced following her move out of state, with ballots continuing to be mailed to her despite repeated notifications – but no crime was committed in their continued mailing. The Office of the Secretary of State states that these actions ensure up-to-date voting rolls in our state:

•       Colorado partners with the US Postal Service, Colorado's Driver's License Bureau, departments of corrections and sheriffs' offices to receive changes of address

•       Lists of those who have died are received from the Colorado Department of Public Health and the Environment and the Social Security Death Index

•       Citizenship status is checked by elections officials to expunge noncitizens

•       Colorado is a member of ERIC (Electronic Registration Information Center), a nonprofit consortium of states that compares voter registration amongst states; this membership allows election officials to see if a voter voted in another state as well as Colorado.

Now, no system is perfect, and you obviously experienced something less than perfect. Of course I can't answer what went wrong in your daughter's case – only that the Office of the Secretary of State states that they take the above actions. Click here if you'd like more information about Colorado's actions to ensure election integrity.

When ballot signature checks fail, indicating potential fraud, the voter is sent a notice and given the opportunity to confirm that they submitted the ballot or that they did not. Colorado actively investigates and prosecutes voter fraud; here's a list of prosecutions. So if your daughter or someone else decided to vote using the ballots mailed to her in Colorado, either the signature check would've failed or ERIC would've flagged her as voting in two states.

The League of Women Voters of Colorado does not claim to represent every woman or person in the state – just our membership, as every League member has the right to vote on each position the League takes. The League maintains the same mission of empowering voters and defending democracy, and we believe that voter intimidation and, therefore, suppression by armed members of a private group, as well as the continued spread of misinformation about the integrity and accuracy of the 2020 election, are doing grave harm to faith in our democratic systems. Each of our 64 county clerks, no matter their political party, certified the 2020 election as being accurate and secure.

To reiterate, because the League cares deeply about safe and fair elections, we're very concerned about USEIP's tactics and will track and report any illegal activity conducted by that or any other group looking to intimidate voters and spread disinformation about our elections systems. It's the same direction the League has had since our founding in 1920.

LWVCO0000060

I'd be very happy to continue this conversation and answer any other questions or concerns you may have over coffee or on the phone, if that's something you'd like to do. I do hope you'll reconsider losing trust in the League based on a very brief email we distributed last week. We hold the same values as ever.

Again, thank you for reaching out – I appreciate your time and hope your disappointment is relieved upon learning more about our actions.

Best --
Beth Hendrix
(she/her)
Executive Director

**LWV** LEAGUE OF WOMEN VOTERS®
OF COLORADO

Empowering voters. Defending democracy.
Empoderar a los votantes. La defensa de la democracia.
303-863-0437 office
303-588-5470 cell

---

**From:** ewalton@engineer.com <ewalton@engineer.com>
**Sent:** Tuesday, September 7, 2021 10:31 AM
**To:** Beth Hendrix <bhendrix@lwvcolorado.org>
**Subject:** voter integrity

Dear League of Women Voters Colorado,
I was insulted and disappointed by your post about some volunteers going door to door. I found your post to be very ignorant and on the verge of threatening. I am thankful that someone is doing this job of checking the voter rolls. My daughter married and moved out of this state years ago. Both she and we told the state this had happened, yet, we continued to receive her ballot, election after election. Someone is not doing their job to clear the voter rolls and that is a crime to have these extra ballots going out to people. This encourages cheating. I am glad USEIP, as you call it, is trying to make our officials get their job done. Let's have some responsibility in the Secretary of State office and do their job. Not only do I feel it is not voter suppression for someone to be checking the voter rolls, I feel it is necessary in this lazy world where we cannot seem to get the simplest thing done correctly.
Speaking of doing things correctly, you are no longer representing me, nor any other women I know. What has happened to you, our League of Women voters? It sounds like you have lost your direction and no longer care about fair and honest elections. someone has hijacked your group.
I am so disappointed with you. I used to trust you. Now I do not.
Sincerely,
Joani Walton
80103

LWVCO0000051

On Tue, Sep 7, 2021 at 9:15 AM Tara M <taralmenza@gmail.com> wrote:

Hi Beth,

I received an email from you about people coming door to door "intimidating" voters. I received a knock on my door a few weeks ago by someone from my community who asked me about voting back in November. The person was very polite and not intimidating at all. They were dressed nice and were very quick with their questions. I wasn't asked who I voted for, merely if I voted. While chatting with them, they said the highest number of anomalies were with registered Dems having votes cast for them when they said they didn't vote in the 2020 election. I thought that was very interesting. From my point of view, I would want to know if my vote was counted. The person mentioned wanting the SoS to clean up the voter rolls and it never occurred to me voter rolls are not accurate. This should be a concern to anyone who votes, in my opinion. Have you gotten complaints of people being intimidating? In what way? I would hope that's not the case! After the year we have had people need to just be kind to each other!

Thanks for your email! I truly hope this isn't happening. It certainly didn't happen to me.

Tara



1:22-cv-581
**TRIAL EXHIBIT**

**84**

I'm writing to introduce you to Melissa Kessler, Legal and Policy director for the Department of State. Melissa reached out to my office regarding a voter intimidation complaint that allegedly occurred in Mesa County. The complainant is Yvette Roberts and she resides in Grand Junction. Based on the information we have currently, this appears to be a single jurisdiction situation that warrants some additional investigation. Melissa will be able to provide additional information.

Appellate Case: 24-1293    Document: 80    Date Filed: 12/23/2024    Page: 66

Please feel free to contact me if you need anything additional.


Sincerely,

Janet


Janet Drake

Deputy Attorney General

Criminal Justice Section

720.508.6716

--
Daniel P. Rubinstein
District Attorney
21st Judicial District Attorney's Office

**Attachments:**

**image001.png** 22k

---

**james.cannon@mesacounty.us James Cannon**                    Wednesday, July 21, 2021 at 8:19:35 AM Mountain Daylight Time
To: dan.rubinstein@mesacounty.us Dan Rubinstein
Cc: Janet.Drake@coag.gov Janet Drake, melissa.kessler@sos.state.co.us melissa.kessler@sos.state.co.us

Hello Melissa,
I am checking in with you, I have not seen any info come over on this yet.
I can tell you I found a report in our local records where it appears that Grand Junction Police have already investigated this as a suspicious incident, but were unable to prove any crime. However I am happy to review whatever other information you may have on this allegation.

Feel free to call me with any questions.

On Tue, Jul 6, 2021 at 4:34 PM Dan Rubinstein <dan.rubinstein@mesacounty.us> wrote:
  Melissa,

  I am copying Sr. Investigator James Cannon, with my office, who handles my election investigations. Can you please get him the information necessary to follow up. If you need anything further from me, please do no hesitate to reach back out.

  Thanks,

  Dan                                                        66

On Tue, Jul 6, 2021 at 4:15 PM Janet Drake <Janet.Drake@coag.gov> wrote:

Appellate Case: 24-1328     Document: 60     Date Filed: 12/23/2024     Page: 67

## RE: [EXTERNAL] Suspicious Activity

### Matt Domboski <Matt.Domboski@SOS.STATE.CO.US>

Fri 7/30/2021 9:50 AM

To:Melissa Kessler <Melissa.Kessler@SOS.STATE.CO.US>
Cc:Caleb Thornton <Caleb.Thornton@SOS.STATE.CO.US>;Nathan Blumenthal <Nathan.Blumenthal@SOS.STATE.CO.US>;Theresa Conley <Theresa.Conley@SOS.STATE.CO.US>;Judd Choate <Judd.Choate@SOS.STATE.CO.US>;Hilary Rudy <Hilary.Rudy@SOS.STATE.CO.US>;Annie Orloff <Annie.Orloff@SOS.STATE.CO.US>;Steve Hurlbert <Steve.Hurlbert@SOS.STATE.CO.US>

Hi Melissa,

We received an email from a Debra Powell regarding individuals who were knocking on doors in Grand Junction asking residents if they voted in the last election. (see email below) We previously received reports of this happening in Mesa County, although not from this particular person.

This activity raises a concern regarding voter intimidation, which is on the DOJ's radar. This alleged activity appears to be an act of voter intimidation which our office could refer to the DOJ for potential prosecution.

The DOJ, in their guidance on post-election audits and voter intimidation, highlighted recent court cases in which the activity mentioned may have constituted voter intimidation under the Voting Right Act of 1965, the National Voter Registration Act of 1993, and Section 131 of the Civil Rights Act of 1957. In addition, the DOJ highlighted a similar scenario where there were proposals to canvass precincts in an urban county to contact individuals face to face in order to see whether the individuals were qualified voters who had in fact actually voted. The DOJ then proceeds to stress that these sorts activities raise voter intimidation concerns.

The DOJ has also stressed that they will act to ensure that citizens feel safe in exercising their right to vote in future elections. Included on the guidance document is a complaint form and hotline to report potential voter intimidation. The DOJ may want to, at minimum, investigate what Ms. Powell is alleging.

I suggest that we refer this matter to the DOJ, but wanted to get your thoughts and the exec team's thoughts on the matter. Thank you.

Best,

**Matt Domboski**
Legal Analyst | Department of State
303.894.2200 ext. 6353
matt.domboski@sos.state.co.us
1700 Broadway, Suite 550
Denver, CO 80290



---

**From:** Public Elections
**Sent:** Thursday, July 29, 2021 12:34 PM
**To:** Matt Domboski <Matt.Domboski@SOS.STATE.CO.US>
**Subject:** FW: [EXTERNAL] Suspicious Activity

| | Date | Doc. Type | File Name | From | To | Cc | Privilege Claim | Privilege Description |
|---|---|---|---|---|---|---|---|---|
| 16 | 9/7/2021 | E-Mail | Re_ Great to talk with you.eml | Salvador Hernandez <salvadorh@mifamiliavota.org> | Beth Hendrix <bhendrix@lwvcolorado.org> | | Attorney Client/Work Product | Email thread between S. Hernandez and B. Hendrix regarding Mi Familia Vota potential involvement in litigation, attaching Confidential Memorandum from FSFP regarding potential litigation |
| 17 | 9/7/2021 | E-Mail | RE_ USEIP.eml | Beth Hendrix <bhendrix@lwvcolorado.org> | Sig Jaastad <sig.jaastad2@gmail.com> | | Work Product | Email thread between B. Hendrix and S. Jaastad regarding USEIP and potential litigation |
| 18 | 9/10/2021 | E-Mail | Re_ USEIFP (1).eml | John Bonifaz <jbonifaz@freespeechforpeople.org> | Karen Sheek <karensheek@gmail.com>; Celina Stewart <cstewart@lwv.org>; Meghan Browder <mbrowder@lwv.org> | Beth Hendrix <bhendrix@lwvcolorado.org>; Courtney Hostetler <chostetler@freespeechforpeople.org>; Ben Clements <bclements@freespeechforpeople.org> | Attorney Client | Email thread between J. Bonifaz, and K. Sheek, C. Stewart, and M. Browder regarding USEIP and potential plaintiffs |
| 19 | 9/10/2021 | E-Mail | Re_ USEIFP.eml | Karen Sheek <karensheek@gmail.com> | John Bonifaz <jbonifaz@freespeechforpeople.org> | Ben Clements <bclements@freespeechforpeople.org>; Beth Hendrix <bhendrix@lwvcolorado.org>; Celina Stewart <cstewart@lwv.org>; Courtney Hostetler <chostetler@freespeechforpeople.org>; Meghan Browder <mbrowder@lwv.org> | Attorney Client/Work Product | Email from K. Sheek to J. Bonifaz regarding potential plaintiffs and contact with journalist |
| 20 | 9/23/2021 | E-Mail | Re_ Prospective Litigation in CO (2).eml | John Bonifaz <jbonifaz@freespeechforpeople.org> | Karen Sheek <karensheek@gmail.com>; Meghan Browder <mbrowder@lwv.org>; Celina Stewart <cstewart@lwv.org>; Beth Hendrix <bhendrix@lwvcolorado.org>; Andrea Wilkins <awilkins@lwvcolorado.org>; Toni Larson <toni.larson@gmail.com> | Ben Clements <bclements@freespeechforpeople.org>; Courtney Hostetler <chostetler@freespeechforpeople.org>; Ron Fein <rfein@freespeechforpeople.org> | Attorney Client/Work Product | Email regarding updates on planned litigation and retainer agreements |
| 21 | 9/23/2021 | Attachment | 2021.09.23 - Retainer Agreement (LWV)[1].pdf | | | | Attorney Client | Retainer Agreement |
| 22 | 9/23/2021 | Attachment | FSFP Retainer Agreement with LWV 092321[1].pdf | | | | Attorney Client | Retainer Agreement |
| 23 | 9/24/2021 | E-Mail | Re_ Prospective Litigation in CO (1).eml | John Bonifaz <jbonifaz@freespeechforpeople.org> | Celina Stewart <cstewart@lwv.org>; LWV Colorado - Karen Sheek <karensheek@gmail.com>; Meghan Browder <mbrowder@lwv.org>; Beth Hendrix <bhendrix@lwvcolorado.org>; Andrea Wilkins <awilkins@lwvcolorado.org>; Toni Larson <toni.larson@gmail.com> | Ben Clements <bclements@freespeechforpeople.org>; Courtney Hostetler <chostetler@freespeechforpeople.org>; Ron Fein <rfein@freespeechforpeople.org> | Attorney Client | Email thread regarding Mi Familia Vota joining litigation |

| | Date | Doc. Type | File Name | From | To | Cc | Privilege Claim | Privilege Description |
|---|---|---|---|---|---|---|---|---|
| 24 | 10/5/2021 | E-Mail | Re_ Prospective Litigation in CO.eml | John Bonifaz <jbonifaz@freespeechforpeople.org> | Beth Hendrix <bhendrix@lwvcolorado.org>; Karen Sheek <karensheek@gmail.com> | Celina Stewart <cstewart@lwv.org>; Meghan Browder <mbrowder@lwv.org>; Andrea Wilkins <awilkins@lwvcolorado.org>; Toni Larson <toni.larson@gmail.com>; Ben Clements <bclements@freespeechforpeople.org>; Courtney Hostetler <chostetler@freespeechforpeople.org>; Ron Fein <rfein@freespeechforpeople.org> | Attorney Client | Email regarding additional potential plaintiff |
| 25 | 10/22/2021 | E-Mail | Re_ Election Integrity.eml | Karen Sheek <karensheek@gmail.com> | John Bonifaz <jbonifaz@freespeechforpeople.org> | Beth Hendrix <bhendrix@lwvcolorado.org>; Celina Stewart <cstewart@lwv.org>; Meghan Browder <mbrowder@lwv.org>; Toni Larson <toni.larson@gmail.com>; Andrea Wilkins <awilkins@lwvcolorado.org>; Laura Baker <info@lwvcolorado.org>; Courtney Hostetler <chostetler@freespeechforpeople.org>; Ron Fein <rfein@freespeechforpeople.org>; Ben Clements <bclements@freespeechforpeople.org> | Attorney Client/Work Product | Email from K. Sheek to J. Bonifaz regarding USEIP contact with voters |
| 26 | 10/22/2021 | E-Mail | Re_ Update on planned CO litigation.eml | John Bonifaz <jbonifaz@freespeechforpeople.org> | Celina Stewart <cstewart@lwv.org>; LWV Colorado - Karen Sheek <karensheek@gmail.com>; Meghan Browder <mbrowder@lwv.org>; LWV Colorado - ED Beth Hendrix <bhendrix@lwvcolorado.org>; Andrea Wilkins <awilkins@lwvcolorado.org>; Toni Larson <toni.larson@gmail.com> | Ben Clements <bclements@freespeechforpeople.org>; Courtney Hostetler <chostetler@freespeechforpeople.org>; Ron Fein <rfein@freespeechforpeople.org> | Attorney Client | Email thread from J. Bonifaz to C. Stewart, K. Sheek, M. Browder, B. Hendrix, A. Wilkins, and T. Larson regarding additional potential plaintiff |
| 27 | 11/12/2021 | E-Mail | RE_ LWVCO v US Election Integrity Plan.eml | Celina Stewart <cstewart@lwv.org> | Beth Hendrix <bhendrix@lwvcolorado.org>; LWV Colorado - Karen Sheek <karensheek@gmail.com> | | Work Product | Email thread between C. Stewart, B. Hendrix, and K. Sheek discussing litigation and personal security |
| 28 | 11/17/2021 | E-Mail | RE_ Mesa County, CO.eml | Celina Stewart <cstewart@lwv.org> | LWV Colorado - ED Beth Hendrix <bhendrix@lwvcolorado.org>; Meghan Browder <mbrowder@lwv.org>; LWV Colorado - Karen Sheek <karensheek@gmail.com> | | Work Product | Email thread between C. Stewart and B. Hendrix, M. Browder, K. Sheek regarding USEIP investigation and litigation |

**From**: Beth Hendrix, Executive Director, LWVCO(bhendrix@lwvcolorado.org) [mailer@mail2.clubexpress.com]
**Sent**: 9/4/2021 4:00:07 PM
**To**: Beth Hendrix [bhendrix@lwvcolorado.org]
**Subject**: Election Questions

[View in your browser](#)



The U.S. Election Integrity Plan (USEIP) is an organization that is continuing to claim voter fraud in the 2020 election. They have volunteers in Colorado who are going door to door in an attempt to find evidence of voter fraud. These actions may be intimidating to voters; voter intimidation is a federal crime. In an effort to keep on top of what this group is doing in our state, we are asking LWVCO members to contact Beth Hendrix ([bhendrix@lwvcolorado.org](mailto:bhendrix@lwvcolorado.org) or 303-588-5470) if you know of anyone who has been approached by this group.

Thank you!

1:22-cv-581
TRIAL EXHIBIT
103

You have received this message from the mailing list of League of Women Voters of Colorado. If you would prefer not to receive these emails in the future, go to the opt-out page and modify your privacy settings. You can also request to be removed from our database completely.

LWVCO0000003

**From**:     Beth Hendrix (bhendrix@lwvcolorado.org) [mailer@mail2.clubexpress.com]
**Sent**:     9/8/2021 11:27:53 PM
**To**:       Beth Hendrix [bhendrix@lwvcolorado.org]
**Subject**:  Your September Issue of The Voter: The Voice of LWVCO



---

• SEPTEMBER 2021 •

---

# Voter Intimidation Notice

The U.S. Election Integrity Plan (USEIP) is an organization that is continuing to claim voter fraud in the 2020 election. They have volunteers in Colorado who are going door to door in an attempt to find evidence of voter fraud. These actions may be intimidating to voters, and voter intimidation is a federal crime.

In an effort to stay informed about what this group is doing in our state, we are asking anyone who has been approached by this group to contact Beth Hendrix, LWVCO Executive Director (bhendrix@lwvcolorado.org or 303-588-5470).

Thank you very much for your help!

---

# This Month In Voting History

1:22-cv-581
TRIAL EXHIBIT
**108**

```
 1              that U.S. Election Integrity Plan and
 2              individuals connected to USEIP were
 3              engaging in intimidating home visits to
 4              Colorado voters."
 5                   Is that correct?
 6         A.    Yeah, that's what it says.  Uh-huh.
 7         Q.    Okay.  How did MFV learn of what's
 8    referenced in paragraph 7?
 9         A.    We first learned about it through the
10    League of Women Voters.
11         Q.    How did you learn about it through the
12    League of Women Voters?
13         A.    That's who called me -- Beth called me
14    and told me about the this group that was going door to
15    door, and that's basically how I learned about it.
16         Q.    And when you say Beth, are you
17    referencing Beth Hendrix?
18         A.    Yes.
19         Q.    Okay.  And were there any other sources
20    that you learned of USEIP's canvassing efforts?
21         A.    No.
22         Q.    And this conversation with Beth
23    Hendrix -- you said it was just a phone call?
24                   Is that right?
25         A.    Yeah.  The initial how I learned about
```

Page 22

voters to the wrong polling places; and hovered over voting tables, aggressively challenging voters' eligibility.[23]

Such conduct is emblematic of modern voter intimidation. Today, voters are rarely overtly threatened with physical or economic harm as they were during the civil rights era; instead, voters are deterred from voting through subtler tactics, such as aggressive poll-watching, anonymous threats of harm, frivolous and excessive voter registration challenges, and coercion by employers.[24] This shift towards subtler methods of intimidation mirrors what has been seen in the employment context, where instances of overt discrimination have declined with the rise of tougher anti-discrimination laws.[25]

These activities are troubling for two reasons. First, they risk suppressing the turnout of particular voting blocs at the polls, potentially swaying election results. Many individuals targeted by ballot security groups are voters who have little experience with public institutions and little time to navigate complex election bureaucracies. Such individuals are particularly likely to forgo voting in the face of increased obstacles.[26] Second, ballot security groups often appear to target minority voters, who have been subject to a long and troubling history of disenfranchisement.[27] Disproportionate burdens on these groups' fundamental voting rights are repugnant to a twenty-first century democracy.

The usual response to these aggressive tactics has been to file complaints with election officials or law enforcement agencies, but this often results in

---

23. Mariah Blake, *The Ballot Cops*, ATLANTIC MONTHLY, Oct. 23, 2012, at 64.

24. *See infra* Part IV.A.

25. *See* Natasha T. Martin, *Pretext in Peril*, 75 MO. L. REV. 313, 397 (2010) ("Discrimination has gone underground. In other ways, it has transformed into unrecognizable subtleties that are easy to conceal and far more difficult to uncover. Employers are quite savvy at concealing even the appearance of impropriety. Since modern discrimination emanates from the intersection of complex systems, it has become virtually unrecognizable, making it extremely difficult to identify its character, form, and origin.").

26. *See, e.g.*, R. Michael Alvarez, Delia Bailey & Jonathan N. Katz, *The Effect of Voter Identification Laws on Turnout* 1, 17 (Cal. Inst. of Tech., Soc. Sci. Working Paper 1267R, 2008) (finding that the strictest voter ID requirements reduce voter turnout and "impose significant negative burdens on voters," especially less educated and low income voters); Robert M. Stein & Greg Vannahme, *Engaging the Unengaged Voter: Vote Centers and Voter Turnout*, 70 J. POL. 487–97 (citing studies suggesting that costs related to voting, such as time spent voting, have a significant negative impact on the likelihood of voting, and also citing studies suggesting that convenience is more influential to the infrequent voter's decision to vote). *See also* Crawford v. Marion County Election Board, 472 F3d 949, 951 (7th Cir. 2007) ("The benefits of voting to the individual voter are elusive . . . and even very slight costs in time or bother or out-of-pocket expense deter many people from voting, or at least from voting in elections they're not much interested in."), *aff'd*, 553 U.S. 181 (2008); Frank v. Walker, No. 2:11-cv-01128, slip op. at 37 (E.D. Wis. filed Apr. 29, 2014) (concluding on the basis of expert trial testimony that "even small increases in the cost of voting can deter a person from voting, since the benefits of voting are slight"); Texas v. Holder, 888 F. Supp. 2d 113, 127 (D.D.C. 2012) (citing the Alvarez study), *vacated*, 133 S. Ct. 2886 (2013) (remanding for further consideration in light of *Shelby*).

27. *See, e.g.*, Stephanie Saul, *Looking, Very Closely, for Voter Fraud*, N.Y. TIMES, Sept. 16, 2012, at A1.

more meaningful response to minority disenfranchisement.[103] The result was the Voting Rights Act of 1965. Unlike the 1957 law, Congress and the President passed the VRA with an appreciation for the limitations of previous voting rights legislation[104] and the political consequences of muscular action.[105]

Sections 2 and 5 of the VRA were undoubtedly the Act's most significant provisions. Section 2 generally prohibited discriminatory voting practices.[106] Section 5 subjected certain jurisdictions with a history of racial discrimination to additional federal oversight through the preclearance process.[107] Next to these sections, the voter intimidation provisions were relatively modest.

Nevertheless, section 11(b) was a deliberate attempt to expand the existing laws against voter intimidation, including by eliminating any legal requirement of racial targeting.[108] Katzenbach drafted much of the VRA's language, and he intended section 11(b) to reach more broadly than section 131(b) of the 1957 Act. In testimony before the Senate Judiciary Committee, Katzenbach explained that the VRA "represents a substantial improvement over [section 131(b) of the 1957 Act], which now prohibits voting intimidation. Under [the VRA] no subjective 'purpose' need be shown, in either civil or criminal proceedings, in order to prove intimidation under the proposed bill. Rather, defendants would be deemed to intend the natural consequences of their acts. This variance from the language of § 1971(b) is intended to avoid the imposition on the Government of the very onerous burden of proof of 'purpose' which some, district courts have—wrongfully, I believe—required under the present law."[109] The VRA's House Report expressly adopts Katzenbach's reasoning: "The prohibited acts of intimidation need not be racially motivated; indeed, unlike [section 131(b)] (which requires proof of a 'purpose' to interfere with the right to vote) no subjective purpose or intent need be shown."[110]

---

103. *Id.* at 95–123, 149–70 (describing the Johnson administration's efforts to pass the voting rights bill). *See also* Menand, *supra* note 94 (quoting Johnson as saying to Katzenbach: "I want you to write me the goddamnest toughest voting rights act that you can devise").

104. Swirsky, *supra* note 29, at 373 & n.102 (2002) ("The Voting Rights Act . . . was enacted in 1965 in response to the perceived inadequacies of the existing voting laws.").

105. KEYSSAR, *supra* note 44, at 213 (describing the political realignment following the passage of the Voting Rights Act).

106. Voting Rights Act of 1965 § 2, 52 U.S.C.A. § 10301 (West 2014).

107. 52 U.S.C.A. § 10304.

108. The text of section 11(b) reads: "No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote . . . ." 52 U.S.C.A. § 10307(b).

109. Voting Rights, Part 1: Hearings on S. 1564 Before the S. Comm. on the Judiciary, 89th Cong. 16 (1965).

110. STATUTORY HISTORY OF THE UNITED STATES, *supra* note 97, at 1502.

vested interest" in those voters staying home on election day, the court held, there was a fair probability that mailing the letter violated the statute.[181]

*Nguyen* is instructive because the court considered the question at the heart of this article: how a statute prohibiting "intimidation" applies to contemporary ballot security tactics.[182] The Ninth Circuit's recognition that the term "intimidation" as used in a voter intimidation criminal statute encompasses not only "forcefully coercive" conduct, but also "manipulation and suggestion," can serve as a guidepost for courts and advocates seeking to understand how to apply the term in the context of modern-day ballot security activity.

### e. Federal Agency Interpretations of "Intimidate," "Threaten," and "Coerce"

Two federal agencies have defined voter intimidation in instructive ways. The Department of Justice, which is charged with enforcing 18 U.S.C. § 594, the criminal voter intimidation statute, recognizes a relatively broad definition of voter intimidation—one that goes well beyond physical force and threats of violence. DOJ's *Elections Prosecution Manual* defines voter intimidation as conduct designed to "deter or influence voting activity through threats to deprive voters of something they already have, such as jobs, government benefits, or, in extreme cases, their personal safety."[183] The definition recognizes that voter intimidation is "likely to be both subtle and without witnesses" and that evidence of voter intimidation includes not only threats, duress, and economic coercion, but any "aggravating factor that tends to improperly induce conduct on the part of the victim."[184] Similarly, according to the manual, criminal voter intimidation statutes prohibit not only physical and economic coercion of voters, but also a broader range of conduct that is "intended to force prospective voters to vote against their preferences, or refrain from voting, through activity reasonably calculated to instill some form of fear."[185]

The United States Election Assistance Commission ("EAC") has issued a report that defines criminal "acts of coercion" in a voting context. As an example, the EAC includes "knowingly challenging a person's right to vote without probable cause or on fraudulent grounds, or engaging in mass, indiscriminate, and groundless challenges of voters solely for the purpose of preventing voter[s] from voting or to delay the process of voting."[186] This interpretation indicates that EAC would likely consider frivolous and excessive

---

181. *Id.*

182. The letter is a classic example of the "offsite threat of prosecution or harm," one category of modern-day voter intimidation tactics. *See infra* Part IV.A.2.

183. U.S. DEP'T OF JUSTICE, FEDERAL PROSECUTION OF ELECTION OFFENSES 54 (2007) [hereinafter DOJ ELECTIONS PROSECUTION MANUAL].

184. *Id.* at 55.

185. *Id.* at 57.

186. U.S. ELECTION ASSISTANCE COMM'N, ELECTION CRIMES: AN INITIAL REVIEW AND RECOMMENDATIONS FOR FUTURE STUDY 14 (December 2006), [hereinafter EAC GUIDANCE].

## B. Remedies

At a minimum, injunctive relief is available under all three statutes.[218] Courts have read section 131(b)—the text of which authorizes "preventative relief, including an application for a permanent or temporary injunction, restraining order, or other order"[219]—to empower courts to tailor sweeping equitable remedies. For example, in *United States v. McLeod*—in which the court found that county officials used frivolous prosecutions to intimidate voters—the Fifth Circuit Court of Appeals ordered that all fines be returned and all convictions be expunged; that the individuals prosecuted receive all costs including attorney's fees; and that the district court "take whatever additional action is necessary to return individuals to their status quo ante."[220] Noting that "[i]n construing the language 'or other order' this Court has always been willing to tailor the remedy to fit the evil presented," the Court cited other examples of closely tailored remedies under section 131(b).[221]

Furthermore the KKK Act explicitly authorizes compensatory damages.[222] Compensatory damages will generally be rare in voter intimidation cases, but are not impossible to imagine. For example, a plaintiff may be able to recover for emotional distress in severe cases of intimidation[223] or recover wages lost due to fighting a frivolous voter registration challenge.[224] Damages are not available to plaintiffs in section 11(b) or 131(b) cases, because the statutes do not authorize them.[225]

Attorney's fees are available to prevailing parties in KKK Act claims under 42 U.S.C. § 1988, the civil rights attorney's fee statute.[226] Attorney's fees are also presumably available to prevailing parties in section 11(b) and 131(b)

---

218. *See* Civil Rights Act of 1957 § 131(c), 52 U.S.C.A. § 10101(c) (West 2014) (authorizing injunctive relief in section 131(b) claims); Mizell v. North Broward Hosp. Dist., 427 F.2d 468, 473 (5th Cir. 1970) (finding that § 1985(3) permits injunctive relief); United States by Katzenbach v. Original Knights of the Ku Klux Klan, 250 F. Supp. 330 (E.D. La. 1965) (granting injunctive relief under section 11(b)); James v. Humphreys Cnty. Bd. of Election Comm'rs, 384 F. Supp. 114 (N.D. Miss. 1974) (granting injunctive relief under section 11(b)).

219. 52 U.S.C.A. § 10101(c).

220. United States v. McLeod, 385 F.2d 734, 749–50 (5th Cir. 1967).

221. *Id.* at 748.

222. Enforcement Act of 1871 § 2, 42 U.S.C. § 1985(3) (2012) ("[T]he party so injured or deprived may have an action for the recovery of damages . . . .").

223. *See, e.g.*, Seaton v. Sky Realty Co., 491 F.2d 634 (7th Cir. 1974) (awarding compensatory damages for emotional distress in civil rights case brought under the Fair Housing Act).

224. *See, e.g.*, Jane Mayer, *The Voter-Fraud Myth*, NEW YORKER (Oct. 29, 2012), http://www.newyorker.com/magazine/2012/10/29/the-voter-fraud-myth (describing burden on Ohio voters whose registrations were challenged by the Tea Party during 2012 election).

225. *See also* Olagues v. Russoniello, 770 F.2d 791, 804–05 (9th Cir. 1985) (ruling that "statutory damages" were not available in a section 11(b) case because not authorized by statute, and stating in dicta that no damages were available to litigants under the Voting Rights Act).

226. 42 U.S.C. § 1988(b) (2012) (authorizing attorney's fee awards for proceedings to enforce § 1985, among other statutes).

Elections Clause speaks more directly than the First Amendment to the question of what types of conduct Congress may prohibit in connection with the act of voting.

### 3. The Reach of the Elections Clause to State and Local Elections

Relying on the Elections Clause to authorize section 11(b) is potentially limiting in one important way. The Clause refers to "elections for Senators and Representatives"[252]—in other words, *federal* elections. Thus, one could argue that section 11(b) does not reach purely state and local elections (i.e., elections that do not include at least one race for federal office). No case has challenged the reach of the Clause in this way, but there is at least one reason to think that it is not so limited. Specifically, from the voters' perspective, there is very little distinction between state and federal elections. In either case, they report to the same polling place and deal with the same officials. If a voter is harassed at the polls voting for their local officials, that voter is unlikely to feel safe at the same polling place on a different day voting for their congressman. Similarly, those who are permitted to intimidate voters at the polls in state and local elections may be emboldened to do the same in federal elections. Therefore, for Congress to effectuate its purpose under the Elections Clause, it must be able to provide the same level of protection to purely state and local elections as it can to federal elections. This theory is reflected in the House Report on section 11(b), which states that, while the Elections Clause is limited to federal elections, Congress's Elections Clause power is plenary within its scope; and, "where intimidation is concerned, it is impractical to separate its pernicious effects between Federal and purely local elections."[253] For this reason, Congress's authority under the Elections Clause is very likely augmented by the Necessary and Proper Clause.[254]

### D. Unreported Cases Involving Successful Voter Intimidation Claims

For most plaintiffs challenging voter intimidation, success is defined as stopping the defendant's conduct. Obtaining an election day injunction through emergency litigation or entering into a settlement in which the defendant agrees to abstain from certain conduct is a successful outcome. There have been at least three recent unreported cases in which litigants have used the voter intimidation claims to achieve these goals. Though without precedential value, these cases

---

252. U.S. CONST. art. I, § 4 (emphasis added).

253. STATUTORY HISTORY OF THE UNITED STATES, *supra* note 97, at 1502–03.

254. *See, e.g.*, United States v. Classic, 313 U.S. 299, 319–21 (1941) (relying on the Elections Clause and the Necessary and Proper Clause to affirm Congress's authority to regulate congressional primary elections). *See also* Foster v. Love, 522 U.S. 67, 71 n.2 (1997) ("The [Elections] Clause gives Congress 'comprehensive' authority to regulate the details of elections, including the power to impose 'the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved.'" (quoting Smiley v. Holm, 285 U.S. 355, 366 (1932)).

entail obtaining an injunction against certain activities during a given election and, ideally, obtaining a *DNC v. RNC*-style consent decree circumscribing the defendant's conduct over a longer period. In addition, such suits should seek to develop the law strategically in a way that is maximally helpful to all voters. That means choosing fact patterns carefully with an eye towards obtaining a judicial decision that interprets the voter intimidation laws expansively. By developing the case law in a strategic fashion, voting rights advocates can aid future litigants and, more importantly, deter ballot security groups and others from intimidating voters.

In other words, at least in its early stages, voting rights litigators should consider an impact litigation strategy. "Impact litigation" refers to "cases in which the attorney's goals go beyond relief for the individual client and encompass some notion of effecting reform for all other [similarly situated] individuals."[391] One often-cited defining feature of impact litigation is that lawyers identify a policy goal first and choose their clients second.[392] The paradigmatic example of impact litigation is the series of school desegregation cases brought by the NAACP Legal Defense Fund in the mid-twentieth century.[393]

Under this model, litigants should consider the most likely parties, the importance of a good fact pattern, the strategy of which claims to bring, and possible counterarguments to be addressed.

### 1. The Parties

Individuals or organizations can bring voter intimidation claims. While it is certainly possible that individuals could hire private attorneys to file voter intimidation claims, given the underdeveloped nature of this case law, and the low dollar amounts presumably at stake, it is unlikely that many individuals would find the effort worthwhile.

In contrast, it is more likely that civil rights organizations or political entities would bring claims strategically with an eye towards the larger voting rights context. There are several reasons why this is the case. First, such groups have a vested interest in election law. Civil rights organizations like the NAACP Legal Defense Fund and the American Civil Liberties Union view the expansion of voting rights as part of their core mission. And partisan groups such as the Democratic National Committee or a Democratic political campaign may be interested in filing a voter intimidation claim given the conservative lean of the ballot security movement and its associations with the Republican Party. Indeed, both sorts of groups have actively sought to raise concerns about voter

---

391. Charles J. Ogletree & Randy Hertz, *The Ethical Dilemmas of Public Defenders in Impact Litigation*, 14 N.Y.U. REV. L. & SOC. CHANGE 23, 23 n.2 (1986).

392. Kevin R. Johnson, *Lawyering for Social Change: What's A Lawyer to Do?*, 5 MICH. J. RACE & L. 201, 221 (1999).

393. *Id.* at 220–21.

of the Civil Rights Act of 1957, and section 11(b) of the Voting Rights Act. Part III of this article discusses the various elements of each of the voter intimidation claims. To briefly review: section 11(b) of the Voting Rights Act of 1965 requires only that plaintiff prove that a defendant engaged in "intimidation," "threats," or "coercion" in connection with voting.[398] Section 131(b) of the Civil Rights Act of 1957 further requires evidence of racial motivation and intent to interfere with the victim's right to vote.[399] The KKK Act does not require proof of racial motivation, but does require evidence of a conspiracy.[400] Thus, as a simple question of establishing liability, claimants should always bring a section 11(b) claim. The only question is whether it is worth also bringing a section 131(b) or KKK Act claim.

Given that a handful of courts have elided the distinctions between section 131(b) and section 11(b) claims, plaintiffs may consider not bringing a section 131(b) claim at all. Filing both claims could risk confusing the issues and prompt a court to miss the ways in which a section 11(b) is easier to establish.

There is a stronger case for bringing a KKK Act claim. While a KKK Act claim requires proof of conspiracy,[401] in many instances the existence of such a conspiracy should be simple to prove given the level of coordination that goes into modern poll-watching and registration challenges. Furthermore, as a matter of remedies, a KKK Act claim may more reliably provide for monetary remedies than a section 11(b) claim. While all three claims provide for injunctive relief,[402] the KKK Act also makes compensatory damages available.[403] Such an award could serve as a deterrent to future voter intimidation or could help drive settlement. Nevertheless, it is unclear how exactly such an award would be calculated in the voting rights context. The KKK Act also makes available attorneys' fees.[404] There is greater legal certainty about how such fees would be calculated as opposed to damages and they could provide similar strategic value for deterrence and settlement leverage. Furthermore, attorneys' fees are often a major source of revenue for nonprofit litigators, which could make it easier for civil rights organizations like the NAACP to justify filing suit. While there is a strong argument that attorneys' fees are also available for a successful section 11(b) claim, the law is not settled.[405]

Another reason to bring a KKK Act claim is for the purpose of political messaging. Liability under the Act carries the additional stigma of conspiracy and its association with the KKK's legacy of politicalized racism. Given the highly coordinated and organizational nature of much ballot security activity, the

---

398. *See supra* Part III.A.2.b.
399. *See supra* note 115.
400. *See supra* note 118 and accompanying text.
401. *See supra* Part III.A.3.
402. *See supra* notes 218–219 and accompanying text.
403. *See supra* notes 222–225 and accompanying text.
404. *See supra* note 226 and accompanying text.
405. *See supra* note 227 and accompanying text.

Act creates the opportunity to brand a particular ballot security group or party committee with these deeply embarrassing associations.[406] Similar to compensatory damages, the threat of such associations could strengthen the law's deterrent effect and help drive settlement.

### 3. Arguing a Claim

The federal civil claims for voter intimidation reach much of the conduct engaged in by modern ballot security groups. But given the inconsistent use of these claims, voting rights litigators are advised to pick their cases carefully to avoid self-defeating court decisions. The most promising claims would target aggressive poll-watching conducted as part of a larger ballot security operation.

To prove that the defendant's conduct is objectively intimidating, voting rights litigators should consider a wide array of evidence. They should seek to obtain affidavits or testimony from the victims describing the defendants' conduct and affirming they were in fact intimidated,[407] as well as affidavits or testimony from witnesses. They should also consider the historical, geographic, and socioeconomic contexts that might have made the defendant's conduct seem particularly intimidating. Defendants can be expected to raise at least three counterarguments: first, that the voter intimidation statutes prohibit only the most egregious conduct occurring when the statutes were passed, such as physical violence and cross-burning, and not the more subtle tactics of modern ballot-security groups; second, that the defendant was acting in accordance with poll-watching statutes, which are ubiquitous among the states; and third, that he or she was merely trying to prevent voter fraud and did not intend to intimidate voters.[408]

With respect to the first argument, this article has already established that the ordinary meanings of "intimidation," "threats," and "coercion" reach beyond the most extreme forms of voter intimidation, and that, in other civil rights cases, courts have read the terms broadly, consistent with their ordinary meanings.[409]

With respect to the second argument, adherence to a statute authorizing poll-watching cannot be a defense. One court, in addressing a section 131(b) claim, has explained that intimidation is not limited to only *per se* unlawful acts; rather, "acts otherwise lawful may become unlawful and be enjoined under [section 131(b)] if the purpose and effect of the acts is to interfere with the right to

---

406. In the lead-up to the 2012 general election, the idea that True the Vote might be violating the KKK Act drew attention from political reporters. *See, e.g.*, Epps, *supra* note 199; Mock, *supra* note 311.

407. *See* DOJ Elections Prosecution Manual, *supra* note 183, at 54 (stressing the "amorphous and largely subjective" nature of voter intimidation, which makes testimony by victims "crucial"). *See also* Brooks v. Nacrelli, 331 F. Supp. 1350, 1353 (E.D. Pa. 1971) (noting the plaintiffs' failure to produce "testimony from any registered voter that he is hesitant to vote or to vote in a certain way because of" the challenged conduct).

408. *See* Bone, *supra* note 282, at 522.

409. *See supra* Part V.A.1.