No. 24-1328

In the
**United States Court of Appeals
For the Tenth Circuit**

COLORADO MONTANA WYOMING STATE AREA
CONFERENCE OF THE NAACP, *et al.*,

*Plaintiffs–Appellants*

v.

SHAWN SMITH, *et al.*

*Defendants–Appellees*

Appeal from the United States District Court for the District of Colorado,
No. 1:22-cv-00581-CNS-NRN (Judge Charlotte N. Sweeney)
**Oral Argument Requested**

**APPELLANTS' REPLY**

Courtney Hostetler
John Bonifaz
Ben Clements
Amira Mattar
Free Speech For People
28 South Main St., Suite 200
Sharon, Massachusetts 02067
(617) 244-0234

Bryan L. Sells
The Law Office of
Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212

*Attorneys for the Appellants*

# Table of Contents

Table of Contents ......................................................................... 2

Table of Citations ....................................................................... 3

Argument ..................................................................................... 6

   I.     Dismissing USEIP wasn't a harmless error. ............... 6

   II.    Excluding the Smith video was an abuse of
         discretion. ................................................................... 11

   III.   The district court focused too narrowly on the
         canvassers' interaction with Roberts. ........................ 14

   IV.   The district court didn't apply the legal standard
         that even the appellees concede is correct. ............... 17

   V.    Smith and Kasun's *Counterman* argument is
         meritless. .................................................................... 20

   VI.   The plaintiffs have standing to bring this case. ........ 24

   VII.  Epp's *ad hominem* arguments are a distraction........ 26

Conclusion ................................................................................. 28

Certificate of Compliance ........................................................ 30

## Table of Citations

### Cases

*Bridges v. Wilson,*
996 F.3d 1094 (10th Cir. 2021) .................................................. 6, 7

*Burson v. Freeman,*
504 U.S. 191 (1992) ...................................................................... 22

*Clapper v. Amnesty International USA,*
568 U.S. 398 (2013) ................................................................ 24, 25

*Counterman v. Colorado,*
600 U.S. 66 (2023) ............................................................ 20, 21, 22

*Czyzewski v. Jevic Holding Corporation,*
580 U.S. 451 (2017) ...................................................................... 26

*Fish v. Schwab,*
957 F.3d 1105 (10th Cir. 2020) .................................................... 25

*Frank v. Lee,*
84 F.4th 1119 (10th Cir. 2023)...................................................... 22

*Hill v. J.B. Hunt Transportation, Inc.,*
815 F.3d 651 (10th Cir. 2016) ........................................................ 7

*Ngo v. Rose City Antifa,*
513 P.3d 628 (Or. Ct. App. 2022) ................................................. 10

*United States v. Archuleta,*
737 F.3d 1287 (10th Cir. 2013) .................................................... 13

*United States v. Caraway,*
534 F.3d 1290 (10th Cir. 2008) .................................................... 13

*United States v. Heinman,*
767 F.3d 970 (10th Cir. 2014) ...................................................... 21

*United States v. McLeod*,
 385 F.2d 734 (5th Cir. 1967) ........................................................ 18

*United States v. McVeigh*,
 153 F.3d 1166 (10th Cir. 1998) ..................................................... 8

*United States v. Smalls*,
 605 F.3d 765 (10th Cir. 2010) ....................................................... 14

**Statutes**

28 U.S.C. § 2111 ............................................................................. 6

42 U.S.C. § 1985 ............................................................................. 6

52 U.S.C. § 10307 ..................................................................... 6, 21

**Other Authorities**

11 Charles Alan Wright & Arthur R. Miller,
 *Federal Practice and Procedure* § 2883 (3d ed.) ....................... 6, 7

*NAACP Announces Programming and Key Speakers for 115th
 National Convention in Vegas*, NAACP (June 27, 2024),
 https://naacp.org/articles/naacp-announces-programming-
 and-key-speakers-115th-national-convention-vegas. ................. 27

*Rioters chant 'hang Mike Pence' on Jan. 6, 2021*, Washington
 Post (June 16, 2022, 1:35 p.m.),
 https://www.washingtonpost.com/video/politics/rioters-
 chant-hang-mike-pence-on-jan-6-2021/2022/06/16/3cc093f1-
 0eb7-427d-8073-b5874ca27e80_video.html ............................... 23

**Rules**

Federal Rule of Appellate Procedure 32 ...................................... 30

Federal Rule of Civil Procedure 26 ............................................... 9

Federal Rule of Civil Procedure 61 ..................................................... 6

Federal Rule of Evidence 401 ............................................................ 8

Federal Rule of Evidence 403 ........................................................... 13

## Argument

## I.    Dismissing USEIP wasn't a harmless error.

The appellees don't dispute that unincorporated associations can be sued for voter intimidation and attempted voter intimidation under Section 11(b) of the Voting Rights Act of 1965, 52 U.S.C. § 10307(b). (Smith & Kasun Br. 29-30 ("SK Br."); Epp Br. 28-34.) Smith and Kasun don't even dispute that unincorporated associations can be sued for a conspiracy to intimidate voters under the Support or Advocacy Clause of the Ku Klux Klan Act, 42 U.S.C. § 1985. (SK Br. 29-30.) The appellees argue instead that the district court's dismissal of USEIP was a harmless error. But this argument can't be squared with what actually happened at trial.

An error is harmless only if it doesn't "affect any party's substantial rights." Fed. R. Civ. P. 61; *accord* 28 U.S.C. § 2111. *See generally* 11 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. and Proc.* § 2883 (3d ed.). "'An error affecting a substantial right of a party is an error which had a substantial influence or which leaves one in grave doubt as to whether it had such an effect on the outcome.'" *Bridges v. Wilson*, 996 F.3d 1094, 1099 (10th Cir. 2021)

(quoting *Hill v. J.B. Hunt Transp., Inc.,* 815 F.3d 651, 659 (10th Cir. 2016).) "'In considering whether an error was harmless, the court necessarily must look to the circumstances of the particular case .... The entire record must be considered and the probable effect of the error determined in the light of all the evidence.'" *Id.* (quoting 11 Wright & Miller, *supra*, § 2883).

Here, the district court granted judgment as a matter of law because it concluded that the plaintiffs "failed to introduce any evidence that can remotely be perceived as intimidating or threatening *on behalf of the three defendants*." (App. 219-20 (emphasis added).) And several times throughout trial, when the plaintiffs tried to offer critical context about USEIP operations, the district court admonished plaintiffs to "stop wasting so much time" because "I have dismissed the organization. It's not on trial here." (App. 150; see also App. 147-49.) The absence of USEIP was thus plainly consequential, as it affected the entire lens through which the district court perceived the case. This case has always been about USEIP and what its members have proudly admitted to doing, but the district court's explicit focus was on the three

individual defendants—not the enterprise as a whole or on the defendants' leadership roles within it.

Smith and Kasun argue that the dismissal of USEIP was harmless because any evidence about USEIP was irrelevant. (SK Br. 29-30.) Not so. For example, evidence from USEIP's internal message board discussing the use of weapons during canvassing efforts and the targeting of minority communities is probative of whether USEIP intimidated or attempted to intimidate voters, and it undermines the credibility of the defendants' claims to the contrary. (App. 131-32, 287.) *See* Fed. R. Evid. 401 ("Evidence is relevant if … it has any tendency to make a fact more or less probable than it would be without the evidence"); *United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998) (observing that the bar for relevance under Rule 401 is "very low"). The plaintiffs didn't have to prove that the messages weren't written by "bots" or that the public was aware of the messages, as Smith and Kasun suggest. (SK Br. 29.) The messages are probative of USEIP's intimidation or attempted intimidation all by themselves, but the district court excluded them because USEIP was no longer on trial.

Epp argues that the district court's error was harmless for two other reasons. First, she faults the plaintiffs for objecting to 21 USEIP fact witnesses that she and Kasun disclosed only "[o]n the eve of the trial" after firing their attorneys. (Epp Br. 30-32.) But as the district court explained in its order excluding those witnesses, Epp and Kasun never disclosed those witnesses during discovery as required by Rule 26(a)(1), and it would have prejudiced the plaintiffs to allow the last-minute disclosure. (Order 6, ECF No. 175.) Perhaps USEIP would have disclosed them sooner, but it had been dismissed from the case more than a year earlier. Springing those witnesses on the plaintiffs less than a month before trial doesn't make the district court's dismissal of USEIP harmless.

Second, Epp points out that the district court denied Kasun's motion in limine to exclude her own testimony during USEIP's organizational deposition. (Epp Br. 32.) But that doesn't mean that the plaintiffs could use the deposition as substantive evidence, as Epp seems to think. Rather, the district court ruled only that the plaintiffs could "use Defendant Kasun's sworn deposition testimony to impeach her." (Epp Supp. App. 37.) The district court noted that

the plaintiffs had already acknowledged that the dismissal of USEIP as a defendant meant that they couldn't use the organization's deposition as substantive evidence. (*Id.*) This ruling reinforces the clear prejudice to the plaintiffs from the district court's legal error.[1]

As the plaintiffs showed in their opening brief, the district court's error completely hamstrung their case. (Appellants' Br. 37-38.) It made this case about what the three defendants did as individuals during a narrow window of time, when the case was really about USIEP's intimidation campaign: a door-to-door operation that its leaders orchestrated, recruited for, trained and encouraged followers, publicized, and publicly positioned as an ongoing strategy and threat to voters. USEIP bragged about this

---

[1] Epp also argues that it wasn't reversible error for the district court to adhere to binding circuit precedent, but she doesn't address the plaintiffs' argument that the district court misread that precedent. (Epp Br. 28-29.) And the one case she cites—*Ngo v. Rose City Antifa*, 513 P.3d 628 (Or. Ct. App. 2022) (table)—is an unreported decision of an intermediate state appellate court in a case having nothing to do with the Voting Rights Act or the Ku Klux Klan Act.

campaign in its training manual, playbook, message boards, speeches, blog posts, and media appearances. The district court's error was thus transformational. It was anything but harmless.

## II.    Excluding the Smith video was an abuse of discretion.

The appellees don't dispute that they waived all objections to the Smith video by failing to object to it in their pretrial disclosures as required by the final pretrial order. Nor do they argue that the district court gave any reasons for excluding the video. Smith and Kasun argue only that the district court could have properly excluded the video as irrelevant and cumulative, and Epp argues that the video was irrelevant, prejudicial, and hearsay. (SK Br. 30-34; Epp Br. 34-36.) But none of these arguments have merit.

The appellees suggest that the video was irrelevant because it was recorded after USEIP's canvassing efforts had concluded and because they claim that Smith's death threat was directed not at voters but at election officials. (SK Br. 30-31; Epp Br. 34-35.) This misses the point: USEIP's canvassing efforts were intended to intimidate voters from voting in *future* elections. Smith's speech,

recorded in February 2022 and posted online, was intended to influence elections in 2022 and beyond. That's why USEIP's post-canvassing efforts to publicize their work are relevant to the plaintiffs' claims.

The video would also have demonstrated that characterizations of it offered by Smith and his attorneys are inaccurate. They insist that Smith's threat was limited to election officials—not voters. (SK Br. 31; App. 136.) But the video makes clear that the threat extended to *anyone* deemed guilty of election fraud. So in addition to being directly relevant to USEIP's intimidation campaign, the video would also have undermined Smith's credibility.

Smith and Kasun suggest that the video was cumulative of other evidence in the record because Smith admitted to some of the contents of the speech, including the death threat, during his testimony at trial. (SK Br. 31-34.) They offer a line-by-line comparison that only demonstrates the plaintiffs' point: Smith's trial testimony sanitizes what he said and how he said it. It doesn't convey Smith's tone and non-verbal communication, and it doesn't

show the crowd's reaction. The video offers insight that Smith's trial testimony did not.

Epp also describes the video as "prejudicial," but she fails to explain how its admission would have unfairly prejudiced her. "Virtually all relevant evidence is prejudicial to one side or the other." *United States v. Archuleta*, 737 F.3d 1287, 1293 (10th Cir. 2013). The question under Rule 403 is not one of "prejudice" but of "unfair prejudice." Fed. R. Evid. 403. And "unfair prejudice must do more than simply harm a defendant's case." *Archuleta*, 737 F.3d at 1293. Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quoting Fed. R. Evid. 403 advisory committee's note). Nothing about the video suggests that the district court, as the factfinder in this case, would have been moved to make its decision on an improper basis.

Lastly, Epp contends that Smith's statements in the video were hearsay, but she misapprehends the hearsay rule: "If [the video] is not offered for the truth of the matter asserted, how can

its exclusion constitute reversible error?" (Epp Br. 35.) The plaintiffs here were not offering the video as substantive evidence for the proposition that anyone engaged in election fraud deserves to hang. They were offering the video for its effect on the listener, which is not a hearsay purpose. *See United States v. Smalls*, 605 F.3d 765, 785 n.18 (10th Cir. 2010).

The district court, of course, didn't exclude the Smith video for any of the reasons offered by the appellees. It excluded the video for no apparent reason at all—even though the defendants had waived all objections to it. Under those circumstances, excluding the video was an abuse of the court's discretion and warrants reversal.

## III.  The district court focused too narrowly on the canvassers' interaction with Roberts.

There's no question here that the district court focused narrowly on the canvassers' interaction with Roberts. That's apparent not only in the district court's analysis of Roberts' testimony, but also in its steadfast refusal throughout the trial to consider any connection between USEIP's canvassing efforts and

the violent insurrection at the United States Capitol on January 6, 2021. (App. 144-45, 208.) There was no intimidation, according to the court, because the canvassers didn't make any "threats of violence" or "vandalism," and the questions they asked were "not intimidating and not improper." (App. 218-19.)

The appellees don't dispute that context matters when determining whether a reasonable person could find something to be intimidating. Nor do they dispute that the district court considered no context beyond Roberts' front steps.

Instead, the appellees suggest that no other context mattered. Smith and Kasun point out that the attempted insurrection at the Capitol had occurred 1,600 miles away and over six months before the canvassers visited Roberts. (SK Br. 38.) It's as though they think Roberts has a short memory and no television or internet. And they ignore the violent rhetoric and denialist fervor that characterized USEIP's voter intimidation efforts after the 2020 presidential election.

But that isn't what context means. A reasonable person in the summer of 2021 would have been familiar with the violent events

of January 6, 2021. That person would have been familiar with the false claims of election fraud that motivated the events of January 6. And that person would have been familiar with the continued election denialism of which USEIP's canvassing efforts were a part. Roberts was aware of all of those things. Yet the district court considered none of those things and thus failed to consider the context with which a reasonable person in Roberts' shoes would have been familiar. That was an error of law and warrants reversal.[2]

---

[2] The appellees also suggest that the district court found (or could have found) no connection between USEIP and the canvassers who interrogated Roberts. (SK Br. 35-37; Epp Br. 36.) But that's not, in fact, what the district court found. Rather, the court found that it was "unclear" whether the canvassers were associated with USEIP but that the canvassers weren't intimidating "even if these folks were from USEIP." (App. 211, 219.) The appellees' argument is thus a red herring because the district court's finding—based on an error of law—that the canvassers engaged in no intimidating conduct was essential to its judgment. And, as the plaintiffs pointed out in their opening brief, the district court's suggestion that the canvassers in Mesa County might not have been connected with USEIP was based on a clear misstatement of Roberts' testimony, Smith's testimony, and other evidence. (Appellants' Br. 50 n.6.)

**IV.  The district court didn't apply the legal standard that even the appellees concede is correct.**

None of the appellees dispute that the court should have considered the context in which the challenged acts of voter intimidation occurred. (SK Br. 45-54; Epp Br. 39-43.) Instead, they disagree about which parts of that context were probative.

Smith and Kasun argue, for instance, that the attempted insurrection at the Capitol on January 6 is irrelevant because it was too distant in time and place. (SK Br. 46.) They suggest that USEIP's substantial efforts to publicize their canvassing efforts are irrelevant to the context because that publicity was "pure political speech." (*Id.*) More generally, they argue that context must be limited by "time, location, agency, or party" such that the only permissible elements of context for purposes of a voter-intimidation claim would be actions by the parties to the litigation or their agents close in time and place to the alleged intimidation. (SK Br. 48-54.)

But, again, that isn't what context means. The context of *McLeod* was not, as Smith and Kasun suggest, "a single small

town" in Alabama. (SK Br. 49 (discussing *United States v. McLeod*, 385 F.2d 734 (5th Cir. 1967).) It was the entire history of racially motivated violence directed at Black people by White people throughout the United States. Black voters in Selma, Alabama, in June 1963—when the events of *McLeod* took place—would have been acutely aware of that broader context and would have understood Sheriff Jim Clark's actions as related to, for example: violence against the Freedom Riders across the South in 1961; violence against student protesters in Albany, Georgia, in 1961 and 1962; and violence against the Children's Crusade in Birmingham, Alabama, in May 1963.

Similarly, a reasonable voter in Colorado even today would be familiar with what happened in Washington, D.C., on January 6, 2021, and the ensuing election denialism of which USEIP's canvassing efforts were a part. Just as the Fifth Circuit held that Sheriff Clark's actions in Selma "cannot be viewed in isolation," *McLeod*, 385 F.2d at 740, neither should the district court here have refused to consider the context in which USEIP's intimidation campaign took place.

Still, Smith and Kasun argue that the plaintiffs "cannot say what the district court did or did not 'consider'" when making its ruling. (SK Br. 45.) And that's true, of course. No one can know what was in the court's heart of hearts. We can only draw inferences based on what the court said and what the court didn't say.

Here, the court incorrectly stated that it "must focus on the acts of defendants directly or those of others who they specifically directed or controlled." (App. 208.) It said that it wouldn't consider evidence "about the January 6th insurrection" or "about the defendants' collective belief that there was election fraud." (App. 208.) According to the court's view of the law, "[n]one of that actually matters." (App. 208.)

The district court's recitation of the facts included nothing about the context in which the challenged acts occurred: the former President—at a January 6 rally attended by all three defendants— had very recently incited a violent insurrection at the United States Capitol with false claims of election fraud that continue to reverberate to this day. The court's recitation of the facts also didn't

mention contemporaneous media reports that the canvassers were armed (App. 182), or the defendants' many public statements about election fraud to publicize their efforts and recruit volunteers (App. 183-96).

The district court's ruling thus suggests that it considered this kind of evidence off limits, and that was reversible legal error. It should have considered all of the surrounding facts with which a reasonable Colorado voter would have been familiar, and it failed to do so here.

## V.    Smith and Kasun's *Counterman* argument is meritless.

Smith and Kasun argue that the plaintiffs here had the burden of showing not just that a reasonable person would have found the defendants' actions to be intimidating or threatening but also that the defendants were "aware of (or recklessly disregarded) their threatening nature." (SK Br. 42.) Their argument is based on the Supreme Court's recent decision in *Counterman v. Colorado*, 600 U.S. 66 (2023), which held that, in a criminal prosecution based on a defendant's allegedly threatening speech, the First

Amendment requires proof that the defendant was (at least) aware of or recklessly disregarded the speech's threatening nature. *Id.* at 82-83; *accord United States v. Heinman*, 767 F.3d 970, 982 (10th Cir. 2014). But this argument is meritless for three reasons.

First, this is not a "true threats" case. The defendants don't face liability here for their speech alone but for their actions. The complaint alleges that the defendants violated the Voting Rights Act and the Ku Klux Klan Act through their "intimidating, threatening, and coercive conduct, which includes threatening to or actually showing up at voters' doors around Colorado to intimidate them and ask whether they engaged in voter fraud." (App. 32.) The defendant in *Counterman*, by contrast, had been convicted only for sending Facebook messages. And no court of which the plaintiffs are aware has ever extended *Counterman* beyond the true-threat context.

To be sure, the Voting Rights Act does prohibit voting-related threats. *See* 52 U.S.C. § 10307(b). A Facebook message threatening someone for voting or attempting to vote would likely violate the Act. But this is not that case. USEIP's canvassers, led by the three

individual defendants, knocked on the doors of more than 9,000 Colorado voters and interrogated them about their voting behavior and other sensitive topics. At least some of those canvassers—including one of the defendants—were armed. The defendants then publicized USEIP's purported evidence of election fraud and declared that anyone involved in such fraud deserves to be executed. Smith's threatening speech is just one piece of USEIP's intimidating enterprise. The rest is pure conduct.

Second, *Counterman* doesn't mean that a law can't subject a person to civil or criminal liability for pure speech. Rather, it means that a law that does so must survive constitutional scrutiny. Preventing voter intimidation has long been a compelling state interest. *See, e.g., Burson v. Freeman*, 504 U.S. 191, 199 (1992) (upholding a 100-foot buffer zone around polling places). And the Act's reasonable-voter standard is sufficiently tailored to serve that interest in the election context. *See Frank v. Lee*, 84 F.4th 1119, 1140-41 (10th Cir. 2023) (discussing the relaxed narrow-tailoring standard for election laws).

Third, even if the Voting Rights Act were construed to include a subjective intent requirement, the record here easily satisfies it. Just as a person who robs a bank almost always intends to rob a bank, USEIP intended for its canvassers to knock on doors in minority neighborhoods with badges and guns and to ask intrusive questions about voting and election fraud. USEIP intended to publicize its so-called evidence of voter fraud. And Smith was at least reckless in saying to a large crowd that anyone involved in election fraud deserves to hang—words that evoked our nation's horrifying history of racist lynchings and echoed grave threats made toward Vice President Pence on January 6, 2021. *See Rioters chant 'hang Mike Pence' on Jan. 6, 2021*, Washington Post (June 16, 2022, 1:35 p.m.), https://www.washingtonpost.com/video/politics/rioters-chant-hang-mike-pence-on-jan-62021/2022/06/16/3cc093f1-0eb7-427d-8073-b5874ca27e80_video.html. Smith, who attended the President's rally on January 6, would have been well aware of the threatening nature of those words.

## VI.  The plaintiffs have standing to bring this case.

Smith and Kasun argue that the plaintiffs lack organizational standing here because "[a]n organization cannot establish standing by diverting resources based on speculative fears." (SK Br. 13; *see also id.* at 13-28.) They acknowledge that the plaintiffs did, in fact, divert resources based on media reports about USEIP's canvassing efforts. (*Id.* at 13.) Still, they contend that those media reports were too speculative to warrant that diversion. (*Id.* at 14-21.) The district court rejected this argument three times (Order 9-19, ECF No. 39; Order 4-10, ECF No. 84; App. 219), and this Court should do the same.

Smith and Kasun base their argument on the Supreme Court's decision in *Clapper v. Amnesty International USA,* 568 U.S. 398 (2013), in which organizational plaintiffs claimed that they were "suffering present injuries" because they had chosen "to take costly and burdensome measures" to protect their communications from potential surveillance under the Foreign Intelligence Surveillance Act. *Id.* at 402. But the Supreme Court rejected that argument because organizations "cannot manufacture standing

merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 416; *accord FDA v. All. For Hippocratic Medicine*, 602 U.S. 367, 383 (2024).

Here, by contrast, the plaintiffs' diversion of resources wasn't based on some hypothetical future harm but on USEIP's actual canvassing efforts.[3] (Trial Tr. 520:15-531:20, ECF No. 188.) That's enough to establish an injury for organizational standing. *See, e.g., Fish v. Schwab,* 957 F.3d 1105, 1120 (10th Cir. 2020) ("But unlike the hypothetical enforcement in *Clapper*, the DPOC requirement here actually was enforced against Mr. Bednasek. And it was that enforcement that caused Mr. Bednasek's injury-in-fact, not any decision he made to spend money to avoid a hypothetical injury.").

Neither *Clapper* nor any other case of which the plaintiffs are aware imposes the kind of due-diligence requirement that Smith and Kasun suggest before an organizational plaintiff may rely on

---

[3] Media reports of armed USEIP canvassers turned out to be true, but the accuracy of the media reports is immaterial since the reports themselves were actual and not hypothetical.

media reports. Smith and Kasun cite no such authority, and their due-diligence rule would be inconsistent with the Supreme Court's recognition that "a loss of even a small amount of money is ordinarily an 'injury.'" *See, e.g., Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017). A due-diligence rule would also be immaterial here, because USEIP did, in fact, carry out the door-to-door campaign that the media reported. Due diligence would have supported the plaintiffs' diversion of resources to protect voters from USEIP's intimidation.

## VII.  Epp's *ad hominem* arguments are a distraction.

Epp's brief is full of factual inaccuracies and *ad hominem* insults. (Epp Br. 7-15, 16-17, 21-25, 27, 38, 40.) These indulgences have no bearing on the issues before the Court, though, so the appellants won't respond to them in great detail here.

Only one bears mentioning. Portia Prescott is the President of the Colorado Montana Wyoming State Area Conference of the NAACP. (Prescott decl. 1, ECF No. 9.) Epp claims without foundation that Prescott's organization "participated in these

proceedings the least amount of any plaintiff organization." (Epp Br. 10.) Epp notes that Prescott wasn't present at the trial until July 18, 2024, and she suggests that Prescott's absence means that "even this trial was not a diversion of resources for Ms. Prescott or the NAACP." (*Id.* at 11.)

What Epp leaves out is that Prescott had official responsibilities at the NAACP's annual convention, held July 13 through July 17, 2024. *See NAACP Announces Programming and Key Speakers for 115th National Convention in Vegas*, NAACP (June 27, 2024), https://naacp.org/articles/naacp-announces-programming-and-key-speakers-115th-national-convention-vegas. Epp also omits the fact that the trial had been scheduled to begin on February 5, 2024, and was moved to July over the plaintiffs' objections only because Epp fired her attorneys and moved for a continuance less than a month before trial was set to begin. (Mot. Continue 1-2, ECF No. 107; Order, ECF No. 122.) Prescott had cleared her schedule for the February trial. (Pls.' Witness List 1, ECF No. 117.) Her limited availability during the July trial dates was thus the result of Epp's own litigation tactics and the district

court's willingness to accommodate them. It doesn't mean that the NAACP didn't divert resources as a result of USEIP's canvassing efforts, as Epp suggests, or that this case isn't important to the thousands of NAACP members in Colorado.

## Conclusion

The appellees' briefs are notable for their length, tone, and *ad hominem* arguments. But they do nothing to rehabilitate the district court's judgment, which rests on error after error. Indeed, the appellees don't even dispute the many legal standards that the district court simply got wrong. They just point fingers.

But the right to vote is too precious for such trifles. Congress adopted the Voting Rights Act and the Ku Klux Klan Act to safeguard our democracy at critical junctures in our nation's history. The district court's rulings here have weakened those protections, and they have undermined accountability.

This Court should therefore vacate the judgment and remand the case to the district court for further proceedings.

Dated: February 3, 2025

**/s/ *Bryan L. Sells***
Bryan L. Sells
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
bryan@bryansellslaw.com
(404) 480-4212


Courtney Hostetler
John Bonifaz
Ben Clements
Amira Mattar
Free Speech For People
28 South Main St., Suite 200
Sharon, Massachusetts 02067
(617) 244-0234


*Attorneys for the Appellants*

## Certificate of Compliance

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because, excluding parts of the brief exempted by Rule 32(f), it contains 4,229 words. This brief also complies with the typeface and type-style requirements of Rule 32(a)(5) and (6) because it has been prepared using Microsoft Word in the 14-point Century Schoolbook typeface in Roman style.


**/s/ Bryan L. Sells**
Bryan L. Sells
Attorney for the Appellants
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
bryan@bryansellslaw.com
(404) 480-4212